CHARLES BAILEY *v.* STATE OF INDIANA.

[No. 873S157. Filed May 19, 1976.]

506

*Lowell E. Enslen,* of Hammond, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Charles Bailey, was convicted of murder in the perpetration of robbery on September 6, 1972. On September 14, 1972, he was sentenced to imprisonment for life. The Appellant's Motion to Correct Errors was denied by the trial court on May 21, 1973. Since that date this appeal has been kept viable by extensions of time requested by the Appellant and granted by this court.

The evidence at trial revealed that on the evening of March 29, 1971, the Appellant entered the Lincoln Food Fair in East Chicago, Indiana. He pulled a gun on the security officer, Ben Garner, and forced him to march to the store's "courtesy booth", where checks were cashed and money was kept. As they arrived at the courtesy booth, the Appellant removed Garner's gun from its holster and ordered the store employee in charge of the booth to give him "all the money."

Ten or twelve people were waiting in line at the booth to cash checks. The courtesy booth employee, Margaret Carrillo, turned to a desk behind her and removed some currency, mostly small bills. The Appellant shouted that he wanted "the large money" and fired a shot in Carrillo's direction, missing her and hitting the wall above her head. She then hastened to remove more cash and placed it in a paper bag. The Appellant seized the bag and turned to leave. As he started to depart he fired a shot at the line of people at the booth, shouting that no one should make a move.

Three people came to the door of the meat department. The Appellant yelled to "get back in there." A customer, William Reid, was standing at a meat counter. The Appellant shouted at him to "stop looking at me" and fired at him. The bullet struck Reid in the chest, killing him.

The Appellant ran out of the store, holding his gun in one hand, Garner's gun in the other, and the bag of money under his arm. Garner pursued him, drawing a second gun from a shoulder holster. He called to the Appellant to halt. When the Appellant turned to face Garner in the parking lot, raising his guns, Garner fired four shots. Two of the shots struck the Appellant, causing him to drop the bag of money. The Appellant was able to continue running, however.

The Appellant ran into the street and was able to climb upon the front bumper of a truck which had slowed to avoid hitting him. Garner pursued the truck on foot and, when that proved unsuccessful, was able to flag down and commandeer a car for the chase. He was able to apprehend the Appellant several blocks later when the truck turned and came to a stop in front of the Inland Steel parking lot. The East Chicago police then arrived and took the Appellant into custody.

I.

The Appellant raises five issues in this appeal. The first contention raised is that the Appellant was denied a fair trial when the trial court refused to grant his challenge to the array of prospective jurors from which his jury was selected. In support of this argument the Appellant presents census statistics which group the population of Lake County by city or town. The percentage of the population of the county as a whole represented by each city is contrasted with the percentage of the array of prospective jurors coming from each of those places. The Appellant then points out that some of these communities are racially segregated, while others are not.

A defendant has the initial burden of demonstrating that purposeful discrimination exists. *Sanders* v. *State*, (1972) 259 Ind. 43, 284 N.E.2d 751. In this case, as in *Sanders*, ". . . the issue before this Court is whether or not counsel for Appellant established a 'significant disparity' between the percentage of Negro citizens selected for jury duty and

the percentage of Negro citizens in the community. If he has done so, his Motion to Strike the Jury Panel should have been sustained because the State failed to introduce any evidence to overcome the inference of discrimination." *Sanders* v. *State, supra* at 53-54, 756.

The Appellant's argument does not meet its initial burden for several reasons. First, the Appellant asks us to make an assumption we cannot make. It is suggested that this court should take judicial notice of the fact that certain of the communities listed by the Appellant are racially mixed and that certain others are not. We are presented only with the Appellant's assertion to support this proposition. The Appellant suggests that this is within the "common knowledge" of the community, but we would hasten to add that this court is not located in Lake County and cannot be expected to be privy to the common knowledge of that community.

Even if we assume that this demographic analysis is correct, the Appellant's argument is still insufficient. The Appellant has not presented to us statistics of those citizens selected to serve as jurors. Rather, the statistics are those of veniremen selected and *appearing* to serve. "It would be an absurd exercise in speculation for this court to invalidate a jury *selection* process when the only evidence on the subject relates solely to the persons *appearing* for duty rather than to the persons selected on the original panel. Therefore, we need not decide what constitutes a 'significant disparity' since the Appellant failed to introduce reliable data upon which to base a finding." *Sanders* v. *State, supra* at 54, 757.

A third factor also presents itself and should be noted. The Appellant does not indicate the race of the prospective jurors complained of, nor does he indicate the race of the jurors finally selected. This is a rather suspicious omission in an argument which charges racial discrimination. The Appellant's reliance on the geographic distribution of prospective jurors is at best an indirect means of supporting

the argument presented to us and at worst is no support at all. The argument presented does not raise an inference of racial discrimination. We find no error.

## II.

The second issue presented concerns the sufficiency of the evidence of the Appellant's sanity. Because the burden of proof on the issue of sanity never shifts from the State, it is contended that "the testimony of the court's witnesses must be disregarded in determining whether, as a matter of law, the State has sustained its burden by introducing any competent evidence concerning the sanity of the defendant." If we do not consider the testimony of the court-appointed physicians, the evidence of sanity is indeed meager. The Appellant is incorrect in his conclusion that this testimony should be disregarded.

The Appellant's argument confuses the burden of proof with the burden of coming forward with evidence. "It is true that where the defense of insanity is pleaded the burden rests on the state to prove beyond a reasonable doubt that the defendant was sane at the time of the commission of the alleged crime, and said burden never shifts, but the presumption of sanity is sufficient to constitute a prima facie case in favor of the state where there is no evidence to dispute it, so that the state is not required to introduce evidence in chief to prove the sanity of the defendant. . . ." *Brattain* v. *State*, (1945) 223 Ind. 489 at 496, 61 N.E.2d 462 at 464-465. In this case, the testimony of the court's witnesses made the introduction of evidence of sanity by the state in response to defense evidence of insanity unnecessary.

It is required by statute that court-appointed physicians, having examined a defendant pleading insanity, shall be called to testify *following* the presentation of evidence for the prosecution and for the defense. Ind. Code § 35-5-2-2 (Burns 1975). It was not possible,

therefore, for the State to call those witnesses at any other time. The Appellant does not contend that the evidence as a whole, including the testimony of the court-appointed physicians, was insufficient to support the jury's verdict. Rather, he contends that the State failed to produce evidence of sanity. This was not required.

## III.

The Appellant's third allegation of error is that the trial court erred in overruling a defense motion to strike the testimony of Dr. Peter E. Gutierrez, a physician appointed by the trial court to examine the Appellant. Dr. Gutierrez received a letter from the Court Administrator of the Lake County Criminal Court dated July 19, 1972, in which he was requested to examine the Appellant regarding his sanity at the time of the alleged crime. Dr. Gutierrez complied and examined the Appellant on August 13 and August 19. The record indicates, however, that Dr. Gutierrez was not actually appointed by the trial court for this purpose until August 29, 1972. The Appellant contends that this witness's examination of him was therefore unauthorized and violated his constitutional rights, including the right against self-incrimination and the right to have counsel present during questioning.

We do not believe that the technical appointment of this physician after his examination of the Appellant rendered him incompetent as a witness. The brief of the Appellant reveals a fundamental misunderstanding: "If Dr. Gutierrez was not properly appointed as a court's witness, the defendant never waived any of his constitutional rights (including the right of self incrimination (sic) and the right to have counsel present . . .)." A defendant being examined by a court-appointed physician does not waive his rights. Rather the examination itself simply does not necessarily result in the production of the sort of evidence which is constitutionally privileged. *Noelke* v. *State*, (1938) 214 Ind. 427, 15 N.E.2d 950. Indeed, in arguing that Dr. Gutier-

rez was in reality unauthorized to conduct the examinations, the Appellant removes from him the power of the State which brings him within constitutional prohibitions.

The fact of the matter is that this witness was competent to testify whether he was appointed by the trial court or not. The constitutionality of the testimony of court-appointed physicians following such an examination has been upheld. *Noelke* v. *State, supra.* The doctor-patient privilege which would preclude the testimony of these and other physicians is waived when a plea of not guilty by reason of insanity is entered. *Lockridge* v. *State,* (1975) 263 Ind. 678, 338 N.E.2d 275. The methods of this witness's examinations are not questioned here. Nor are his credentials as an expert.

The Appellant does suggest that the doctor does not fit the statutory requirement of a "disinterested physician." Ind. Code § 35-5-2-2 (Burns 1975). The Appellant points out that Dr. Gutierrez reviewed the prosecutor's file and the police report in coming to his conclusions. We fail to see any impropriety in his review of all the facts at his disposal. The Appellant also points out that this doctor has examined "over 500 persons 'for this Court' " and has earned substantial sums of money each year from Lake County for providing medical services. The frequency of the doctor's examinations would seem to be evidence of his expertise as much as anything else. The Appellant's brief implies that the witness is some sort of perjurer for hire, presenting no substantial evidence in support. Such name-calling does not aid the Appellant's argument.

This witness was competent to testify. He was qualified. There is no evidence to suggest that he was not disinterested. The trial court did not err in refusing to strike his testimony.

## IV.

Entered into evidence at trial was State's Exhibit No. 25, a bullet found at the scene of the crime. The Appellant maintains that the foundation laid for this exhibit was inadequate, that there was no connection drawn between the bullet and the Appellant. The prejudice, it is contended, is apparent and reversible error results.

An exhibit, of course, must be connected to a defendant in order to be admitted into evidence. The fundamental concepts of relevancy and materiality require this. But the proof of such a connection need not be as strong as the Appellant apparently suggests:

"It has long been settled law in this jurisdiction that any evidence tending to prove a material fact is admissible, even though its tendency in that direction may be exceedingly slight. *Smith* v. *State* (1937), 212 Ind. 605, 10 N.E.2d 899. It is equally well settled that positive proof of authentication of a fact or a thing is not necessary for admission of that fact or thing into evidence but circumstantial evidence is relevant. *Dixon* v. *State* (1963), 243 Ind. 654, 189 N.E.2d 715. This court, in *Pullins* v. *State* (1970), 253 Ind. 644, 256 N.E.2d 553, held that 'any fact which tends to connect appellant with commission of a crime is admissible'." *Elliott* v. *State*, (1972) 258 Ind. 92 at 96, 279 N.E.2d 207 at 209.

The connection between the Appellant and this exhibit was sufficiently made. Witnesses to the shooting testified that William Reid was standing at the meat counter when he was shot by the Appellant. The bullet in question was found on the floor near the meat counter some two days later. The pathologist who conducted the autopsy of the victim reported that the fatal bullet passed entirely through the body of the deceased. The Appellant's suggestions that there may have been other shooting incidents at the store or that some store patron or employee may have dropped the bullet attack the weight to be attached to this evidence, but do not affect its admissibility into evidence.

## V.

The Appellant's final contention is that the trial court erred in giving Final Instruction No. 16. The Appellant has waived this issue because no objection was made at trial. Ind. R. Crim. P. 8(B) ; *Thomas* v. *State*, (1975) 262 Ind. 590, 321 N.E.2d 194. Nor was this instruction challenged in the Appellant's Motion to Correct Errors. The failure to set out an alleged error with specificity in a motion to correct errors will result in waiver of that issue. Ind. R. Tr. P. 59; *Finch* v. *State*, (1975) 264 Ind. 48, 338 N.E.2d 629.

Finding no error, we affirm the judgment of the trial court.

All justices concur.

NOTE.—Reported at 346 N.E.2d 741.