Alexander NAGY, Appellant,

v.

STATE of Indiana, Appellee.

No. 1176S416.

Supreme Court of Indiana.

March 5, 1979.

Donald E. Transki, Michigan City, for appellant.

Theo. L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Nagy was convicted of kidnapping by a jury in the Pulaski Circuit Court and was sentenced to life imprisonment. The kidnapping occurred on October 11, 1975, when appellant and five other inmates of the Indiana State Prison in Michigan City took two prison staff members hostage at gunpoint in an effort to escape. After breaking out of the maximum security section, the escapees became aware of police units in the area and therefore broke into the home of the warden, Leo Jenkins, which was located on the prison grounds. The inmates then forced the warden, his wife, daughter and the two staff members into the warden's car. The inmates, with their hostages, then crashed through a gate and were apprehended by police when the vehicle became disabled.

Appellant presents four issues for our review concerning: (1) the denial of his Motion for Continuance; (2) the testimony of one of the court appointed psychiatrists; (3) the refusal of appellant's tendered instruction on entrapment, and; (4) the sufficiency of the evidence.

### I.

Several months before trial, appellant, who was incarcerated in the state prison, filed a "Motion to Use Law Library" with the LaPorte Superior Court. This motion stated that Nagy intended to "participate in his own defense" and requested that he be given access to the prison law library. An order was entered on appellant's motion which directed the prison warden to make available a "lay counselor" to assist Nagy for a period of time not to exceed "one hour each day, five days per week," and to provide whatever materials that may be available in the prison law library.

Sometime later, appellant became unhappy with the lay assistance he was receiving so he filed a Petition for Citation for Contempt against the prison warden in the Pulaski Circuit Court. The contempt citation charged the warden with failure to comply with the earlier order issued by the LaPorte Superior Court. Following a full hearing, the petition was overruled. Appellant then requested a continuance on the ground that he was denied access to law materials with which he could assist in his defense. This motion was also denied.

■ Appellant now maintains that the prison official's non-compliance with the order of the LaPorte Superior Court constituted a violation of his constitutional right to conduct his own defense, *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, and his right to access to the courts as recognized in *Bounds v. Smith* (1977), 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72. This argument fails to recognize the obvious and important principle that the source of constitutional rights is the constitution and not a pre-trial court order. Further, the parameters of such rights are established by federal and state appellate decisions which interpret the Constitution. Thus, neither the terms of the court order nor the prison official's degree of compliance therewith are relevant to a determination of whether or not appellant's constitutional rights have been violated.

■ Appellant's claim that he was denied his *Faretta* right of self-representation is without merit. This Court has held repeatedly that the right to represent one's self is forfeited absent a timely, clear and unequivocal assertion of the right. *Russell v. State* (1978), Ind., 383 N.E.2d 309, 313; *Anderson v. State* (1977), Ind., 370 N.E.2d 318, *cert. denied* (1978), 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786. Requests which are essentially for "hybrid" representation fail to meet this clear and unequivocal standard. *Russell, supra*, 383 N.E.2d 313. In the present case, the only alleged assertion by appellant of the right of self-representation is the statement in his "Motion to Use Law Library" that it was "his intention to participate in his own defense." This statement, coupled with the fact that appellant was at all times represented by counsel, indicates that appellant's desire was for "hybrid" rather than self-representation. As there was no clear and unequivocal assertion, appellant's right of self-representation was forfeited.

Appellant's reliance upon *Bounds v. Smith, supra,* as support for his contention that he was denied his Fourteenth Amendment right of access to the courts also fails. *Bounds* involved a civil rights action brought by state prison inmates in North Carolina who claimed they were denied their fundamental right of access to the courts by the prison officials' failure to provide legal research facilities. The Supreme Court ruled that the Constitution required the prison authorities to assist the inmates in the preparation and filing of meaningful legal papers by providing adequate law libraries or adequate assistance from persons trained in the law. The purpose of this holding was to remedy the situation which found indigent prisoners who, after conviction, still had available to them various state or federal statutory means of attacking their convictions but who no longer had a right to the assistance of counsel. Without a public defender, prison law library or other means of assistance, these prisoners would be effectively precluded from exercising their right to file such post-conviction actions as habeas corpus and civil rights suits.

The rule of *Bounds* obviously has no application in the present case where appellant was being represented by counsel at the time he claimed a denial of his right of access to the courts. *Cf. Ciccone v. Waterfront Com'n of New York Harbor* (S.D.N.Y. 1977), 438 F.Supp. 55, 59; Potuto, *The Right of Prisoner Access: Does Bounds Have Bounds?* 53 Ind.L.J. 207, 224 (1977–78). Moreover, we do not believe, nor do we find any support for the idea that the appropriate remedy for a violation of a prisoner's access rights would be a reversal of his conviction. Rather, the remedy seems to be some form of injunctive relief whereby the prison officials are ordered to institute a plan designed to provide inmates with meaningful access to the courts. *Bounds, supra.* There is no error here.

## II.

Following his plea of not guilty by reason of insanity, the trial court ordered that appellant be examined by two psychiatrists, Drs. Berkson and Hogle. At trial, both doctors testified that appellant was sane. However, appellant claims that the trial court erred by allowing Dr. Berkson to give opinion testimony because he did not know the legal definition of insanity and because he had served as a psychiatric consultant for the prison on a part-time basis since 1962.

Appellant's contention concerning Dr. Berkson's knowledge is simply not supported by the record. A review of that part of the record containing Dr. Berkson's testimony reveals that he was well versed in the legal definition of insanity and was thus competent to express his opinion on same.

Appellant also claims that Dr. Berkson should not have been allowed to testify because his part-time work with the prison, allegedly rendered him an "interested" witness in contravention of Ind.Code § 35–5–2–2 (Burns 1975). Appellant does not explain, nor are we able to discern, how Dr. Berkson's work with the prison would give him an interest in the outcome of appellant's trial. The mere fact that the doctor received money from the State for his consultations would not, standing alone, render him an interested witness. *Cf. Bailey v. State* (1976), 264 Ind. 505, 512, 346 N.E.2d 741, 745. In any event, the doctor's employment with the prison was brought out before the jury in both the trial court's direct examination and defense counsel's cross examination. The triers of fact were thus able to give that fact whatever weight it deserved.

## III.

The next assignment of error concerns the trial court's refusal of appellant's tendered instruction on entrapment. Appellant argues that the prison warden had knowledge of rumors that there would be an escape attempt from the maximum security section, that there was a gun somewhere in the prison and that appellant had a history of escape attempts and mental illness, yet the prison officials took no steps to remove appellant from the maximum

security section where he was being held. We fail to see how these facts tend to support appellant's theory that he was induced or lured into kidnapping the warden and his family. As there was no evidence presented at trial to support the entrapment theory, the trial court correctly refused appellant's instruction. *Hash v. State* (1972), 258 Ind. 692, 284 N.E.2d 770.

### IV.

Finally, appellant challenges the sufficiency of the evidence supporting the jury's conclusions that he kidnapped the warden and that he was sane when he did it. In regard to his first contention, appellant claims that the evidence adduced at trial showed that the warden was being "held as a hostage and not that he was carried away." We think the evidence set out at the beginning of this opinion adequately supported appellant's conviction of kidnapping.

 When reviewing the sufficiency of the evidence on the issue of sanity, we treat the issue like other questions of fact. This Court does not judge the credibility of witnesses nor reweigh evidence, but rather looks to the evidence most favorable to the State along with any reasonable inferences therefrom. If there is substantial evidence of probative value to support the jury's conclusion that the defendant was sane at the time of the commission of the crime, that conclusion will not be overturned. *Sypniewski v. State* (1977), Ind., 368 N.E.2d 1359, 1363. In the present case, two court appointed psychiatrists testified that in their opinion appellant was able to conform his conduct to the requirements of the law at the time of the kidnapping. Also, the appellant's own testimony indicated that the escape plan had been well thought out in advance with careful calculation as to the odds for success. We find this evidence sufficient to support the jury's conclusion that appellant was sane when he kidnapped the warden.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER and PRENTICE, JJ., concur.

HUNTER, J., concurs in result with opinion.

HUNTER, Justice, concurring in result.

I concur in result only because I dissent from the reasoning regarding self-representation. The majority's discussion of the right to self-representation is unnecessary herein in that the evidence was clear that the defendant was allowed access to the law library, and that he was assisted in the trial defense by an attorney. Furthermore, the defendant demonstrated no prejudice. Finally, contrary to the implication within the majority opinion, all of the ramifications of the *Faretta* right of self-representation have not been clarified by this Court. It has been held that even requests for essentially "hybrid" representation may be tolerated by a court so long as the choice does not subvert the orderly procedure of the courts. *German v. State*, (1978) Ind., 373 N.E.2d 880. The denial of the continuance was within the trial court's discretion. *German v. State, supra.*