**Donald Gene FRYBACK, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1278S301.**

Supreme Court of Indiana.

March 5, 1980.

Rehearing Denied April 22, 1980.

577.16(1)

Joseph A. Williams, Fort Wayne, for appellant.

Theodore L. Sendak, Atty. Gen., Jack R. O'Neill, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This was a prosecution upon an information which charged appellant with violating Ind.Code § 35–1–54–1 (since repealed), the second degree murder statute. There was a trial by jury which resulted in a conviction by a verdict of guilty, and a judgment on the verdict from which the defendant, appellant herein, appealed to this Court. Appellant received a sentence of life imprisonment.

The errors urged by appellant involve:

(1) the granting of a prosecution motion for continuance and the overruling of defendant's motion to proceed with trial and alternative motion for dismissal;

(2) sufficiency of evidence of purpose, malice and sanity;

(3) the admission of an autopsy photograph of the victim;

(4) the failure of the trial court to declare a court-appointed physician disqualified to testify because of alleged lack of disinterest; and

(5) the imposition of a life sentence for the crime.

I.

Appellant was arrested upon this murder charge in November, 1976, and in December, 1976, defense counsel filed a petition for an examination to determine competency to stand trial. By the end of January, examinations for this purpose had been concluded. In April, 1977, appellant entered his plea of not guilty by reason of insanity and the cause was set for trial by jury for July 26, 1977. Apparently, the physicians who had already examined appellant were to testify at trial on the issue of sanity at the time of the offense based upon their January examinations. On July 19, 1977, in preparation for trial the prosecution learned that one of these physicians was out of the state and unavailable to testify at the scheduled trial. The next day, on July 20, the prosecution filed a verified motion for continuance pursuant to Ind.Code §§ 35–1–26–1 and 2 because of the non-availability of this witness. The motion was timely and complied in all respects with the statute and with Ind.R.Tr.P. 53.4. The motion was granted over a general objection on the date it was filed. In the trial court and before this Court appellant has been unable to particularize the manner in which the grant of the continuance to the prosecution prejudiced his ability to present a defense. From the standpoint of the statute the continuance was properly granted. *DeVaney v. State*, (1972) 259 Ind. 483, 288 N.E.2d 732; *Gregory v. State*, (1972) 259 Ind. 295, 286 N.E.2d 666.

On July 25, 1977, appellant filed a motion to proceed with trial on the following day as previously scheduled or in the alternative for dismissal. The motion was based upon alleged delay for more than six months in bringing him to trial as specified by Ind.R.Crim.P. 4(A), and also upon the Sixth Amendment and Fourteenth Amendments and Art. 1, § 12, of the Indiana Constitution. The motion was denied and appellant argues that the trial court erred in refusing to discharge him. Assuming that delay beyond the six months limitation of Criminal Rule 4(A) occurred, according to the express terms of the rule appellant would only have been entitled to release on his own recognizance and not discharge or dismissal. The denial of the motion was therefore proper from the viewpoint of the rule. The record reflects that appellant was released on a $10,000 bond on August 5, 1977, and the trial reset for September 13, 1977. After further delays and continuanc-

es, some requested by appellant, his trial actually commenced on June 27, 1978.

[3–5] The right to a speedy trial is fundamental to our system of justice and is guaranteed an accused facing criminal charges in Indiana courts by the Sixth Amendment through the Fourteenth Amendment. *Klopfer v. State. of North Carolina,* (1967) 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1. It is likewise guaranteed by Art. 1, § 12, of the Indiana Constitution. Criminal Rule 4 has as its purpose the enforcement of the state constitutional guarantee of a speedy trial. *Easton v. State,* (1972) 258 Ind. 204, 280 N.E.2d 307. Trials conducted in conformity with the rule meet the state constitutional standard. Accordingly, we hold that as the denial of the motion for discharge for delay in trial was in conformity with the governing rule, it was also in conformity with the mandate of Art. 1, § 12, of the Indiana Constitution.

[6] In *Barker v. Wingo,* (1972) 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the United States Supreme Court set forth the balancing test to be utilized in determining whether the federal constitutional right has been denied. Four factors to be considered include: length of delay, the reason for delay, the defendant's assertion of his right, and prejudice to the defendant. Here a significant part of the delay from arrest to the date of the motion for dismissal was filed was the product of appellant's request for examination by psychiatrists and his plea of not guilty by reason of insanity. The delay occasioned by the State's continuance was the result of the absence of a critical witness from the State. This was a serious charge which would require considerable preparation. There was no deliberate attempt on, the part of the prosecution to impede the defense, although it could certainly have been more diligent in notifying its physician witnesses of the trial date so as to have permitted them to have arranged their schedules to accommodate that trial. Appellant moved in a timely fashion in response to the motion of the prosecution for a continuance, but presented little to show prejudice from further delay. He was in fact released on recognizance on August 5. Appellant argues on appeal that at the time the trial court overruled his motion to dismiss in July, 1977, he had already been deprived of his right of speedy trial. Upon application of the federal test and with a full recognition of the fundamental interest at stake, we conclude that even had the trial taken place in September, 1977, the date to which it was continued, within a period of ten months of appellant's arrest on this charge, no deprivation of the federal right occurred under the circumstances of this case.

II.

[7–11] Appellant next contends that the evidence was insufficient to prove that appellant purposely and maliciously killed the deceased and that he was sane at the time of the killing. In determining these questions we do not weigh the evidence nor resolve questions of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State,* (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Glover v. State,* (1970) 253 Ind. 536, 255 N.E.2d 657; *Taylor v. State,* (1973) 260 Ind. 64, 291 N.E.2d 890. An act is done purposely if it is willed and designed with a plan that it be done and is done with an awareness of probable consequences. *McKinstry v. State,* (1975) 264 Ind. 29, 338 N.E.2d 636. Malice is any evil design in general and may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm. *White v. State,* (1976) 265 Ind. 32, 349 N.E.2d 156. The burden of the State to prove appellant sane can be met by sufficient evidence that the accused was not suffering from a mental disease or defect at the time of his conduct comprising the offense or that if so suffering he was nevertheless possessed of a substantial capacity to appreciate the wrongfulness of such conduct and to con-

form his conduct to the requirements of the law. *Hill v. State*, (1969) 252 Ind. 601, 251 N.E.2d 429; *Williams v. State*, (1979) Ind., 393 N.E.2d 183.

According to the testimony when viewed in a light most favorable to the verdict, the victim White lived with his family in a basement apartment of a building in Fort Wayne. Appellant occupied an apartment upstairs. On November 14, 1976, at about 7:00 p. m., Mr. White was seated in his living room with his children watching television when appellant knocked on the door and in a low tone asked, "Can you turn down the heat?", whereupon White walked over and turned down the thermostat controlling the furnace for the building. Appellant then murmured some words which none could understand. Mr. White then approached appellant. When Mr. White was about three feet from him appellant drew a revolver, holding it in one hand, cocked it and fired it. The bullet struck Mr. White in the abdomen and killed him. Appellant then "flashed the gun around at everybody" in the room, turned and ran up the basement steps, taking them three at a time.

Immediately prior to the shooting appellant and his wife had returned to their apartment to find it very hot. Appellant then procured a key to a box in which he kept his .22 revolver, unlocked the box and stuck the weapon in his waistband and proceeded to the White apartment. Immediately after the shooting upon returning to his apartment he handed the gun to his wife and told her to get rid of it.

There was further evidence that appellant had consumed alcohol prior to the occasion, had a .20 percent blood alcohol three hours after the shooting, and was an habitual user of alcohol. The officers who arrested appellant only minutes after the shooting had no difficulty in understanding him, and received a ready "yes" from him when he was read his rights. Appellant at that point denied knowledge of the shooting. Three hours after the shooting appellant signed a rights waiver form to which he legibly subscribed the words "8th grade education". He then admitted the shooting. The interrogating officers described his movements as good and his speech as not slurred. He was coherent, rational and not out of control.

There is some evidence present that it had been reported to appellant some weeks prior to the shooting that his daughter may have fought with one of the White children and that his wife may have spoken to the Whites on that subject.

One psychiatrist testified at trial that at the time of the shooting appellant was sane. The legal definition of sanity was provided the witness during questioning.

This evidence recited could lead a reasonable trier of fact to conclude to the requisite degree of certainty that appellant carried out a conscious design, with a rebellious attitude, to punish Mr. White for felt grievances by shooting him, and that he deliberately and consciously carried out the plan. The jury could also rationally conclude that even if appellant's use of alcohol could be considered a mental disease or defect on the occasion of this shooting he maintained an awareness of the wrongfulness of his conduct and was fully capable of conforming his conduct to the requirements of the law. The evidence was sufficient to warrant the jury verdict.

Appellant relies heavily upon evidence tending to establish that he had consumed a large quantity of alcohol on the day of the shooting, and suffered from a mental disease related to his use of alcohol. It presented conflicts in the evidence which could only be resolved by the trier of fact. The jury was warranted in making the evaluations and resolutions for the State which led it to conclude that appellant was legally sane and had acted with purpose and malice.

### III.

Appellant next contends that the court erred in admitting State's Exhibit No. 7, a color photograph of the upper portion of the victim's body. It is located on an autopsy table, and shows an unsightly and

roughly sewn-up zig-zag incision covering the entire length of his chest. In *Brandon v. State*, (1978) Ind., 374 N.E.2d 504, this Court held with regard to the admissibility of such photographs:

·"Without a clear showing of prejudicial imbalance between relevance on the one hand and the tendency to appeal to passion and prejudice on the other, the trial court's determination will not be disturbed." 374 N.E.2d at 507.

This photograph was identified by one of the White children as the victim, his father. It was relevant as aiding in proof of the identity of the victim and the fact of death of a human being. The tendency on the other hand for the photograph to have inflamed the passions of the jury or engendered an excessive sympathy for the victim was minimal. There was no prejudicial imbalance between the relevance of the photograph and its tendency to appeal to passion and prejudice. Its admission was not error.

### IV.

Appellant next contends that the psychiatrist witness who testified that appellant was sane at the time of the offense was not disinterested as expressly required by Ind. Code § 35–5–2–2, and that the court should have struck his testimony. The three essential parts of the testimony of such witnesses relate to professional qualification, the medical opinion, and the basis for the medical opinion. This witness was clearly qualified from a professional viewpoint; he stated among his several conclusory statements on at least one occasion after having been given the substance of the *Hill* test that in his opinion appellant was sane at the time of the offense; and when his entire testimony is viewed as a whole did inform the jury of the steps he took in arriving at his opinion including the January interview with appellant. The direct and cross-examination of the witness did proceed with difficulty. The witness resisted explaining his opinions in terms useful in applying the present legal test of insanity. He appeared at points in his testimony as leaping from a description of his examination to his ultimate conclusion by way of the statement of

the legal conclusion that self-administered alcohol cannot relieve a person of criminal responsibility. Defense counsel was apparently surprised by the witness' revelation that he had conferred with the police and prosecutor and had viewed a video tape of appellant. The tape was however published at trial.

In order to make an order striking the testimony of a qualified psychiatric witness at trial, it should be clear to the trial court that the witness had no medical opinion or that the opinion given was motivated by interest or bias. Cf. *Harris v. State*, (1974) 262 Ind. 208, 314 N.E.2d 45; *Bailey v. State*, (1976) 264 Ind. 505, 346 N.E.2d 741. Here the evidence did not rise to that level. His view of the video-tape and contact with the prosecution was consistent with a desire to learn more about appellant and his conduct for the purpose of forming a medical opinion. The tenor of the testimony into which legal opinions crept is consistent with a felt need on the part of the witness to display his knowledge of the law in the field and to express a frustration in dealing with it. Appellant was not denied a fair trial by reason of this testimony. It was not error to refuse to strike the witness' testimony.

### V.

Appellant's last contention is that the life sentence he received is so greatly disproportionate to the seriousness of the crime as to be contrary to the requirement of Art. 1, § 16 and 18, of the Indiana Constitution that the penal code be based upon principles of reformation and not vindictive justice and that penalties be proportioned to the nature of the offense. He also posits that the sentence constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution. It has been previously held that a life sentence for the purposeful and malicious killing of a fellow human being is not violative of these constitutional provisions. *Shackelford v. State*, (1976) 264 Ind. 698, 349 N.E.2d 150; *Wilson v. State*, (1978)

Ind., 373 N.E.2d 1095; *Emery v. State,* (1973) 261 Ind. 211, 301 N.E.2d 369; *Baum v. State,* (1978) Ind., 379 N.E.2d 437.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.

**Ruth B. HAZELETT, Appellant
(Plaintiff Below),**

v.

**BLUE CROSS AND BLUE SHIELD OF INDIANA, Mutual Hospital Insurance, Inc., and Mutual Medical Insurance, Inc., Appellee (Defendant Below).**

**No. 2-278A38.**

Court of Appeals of Indiana,
Second District.

Feb. 21, 1980.

Insured brought suit against health insurer, based on allegation that the "other insurance" provision in health insurance policy violated public policy. The Circuit Court, Grant County, A. Morris Hall, J., dismissed suit on ground that insured had failed to exhaust her administrative remedies by challenging disputed provision before Indiana Insurance Commissioner, and insured appealed. The Court of Appeals, Buchanan, C. J., held that trial court improperly dismissed insured's suit as there was no administrative remedy for insured to exhaust.

Reversed and remanded.

**1. Insurance ⟨⟨⟩⟩612(1)**

In suit by insured against health insurer, based on allegation that the "other insurance" provision in health insurance policy violated public policy, trial court improp-

erly dismissed suit on grounds that insured had failed to exhaust her administrative remedies by challenging disputed provision before Indiana Insurance Commissioner, as there was no administrative remedy for insured to exhaust. IC 27-8-5-1 (1976 Ed.).

**2. Insurance ⟨⟨⟩⟩612(1)**

Insured, who brought suit against health insurer, based on allegation that the "other insurance" provision in health insurance policy violated public policy, was not required by statute governing accident and sickness insurance policy provisions to first challenge disputed provision before Indiana Insurance Commissioner. IC 27-8-5-1 (1976 Ed.).

**3. Insurance ⟨⟨⟩⟩4.2**

Even individual or organization without proper legal standing may bring issue of whether insurance policy provision violates public policy to attention of Indiana Insurance Commissioner.

**4. Statutes ⟨⟨⟩⟩188, 205**

The basic rules of statutory construction require that a statute be construed as a whole, giving words their plain, ordinary and usual meaning.

---

Allen C. Mattson, Ford & Mattson, Hartford City, for appellant.

Donald C. Trigg, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

**CASE SUMMARY**

Ruth B. Hazelett (Hazelett) appeals the dismissal of her suit against Blue Cross and Blue Shield of Indiana, et al (Blue Cross), claiming she was not required to exhaust any administrative remedies prior to bringing her action.

We reverse.

## FACTS

The facts are not in dispute:

Hazelett had health insurance coverage under Blue Cross and Blue Shield personal protection plan certificates of membership, which had previously been approved by the Indiana Insurance Commissioner (Commissioner). Under Article I(O) of the certificates, major medical benefits were payable only after payment from other insurance coverage had been deducted. Clearly stamped on the outside of the major medical certificate of membership was the following notice:

## NOTICE

MAJOR MEDICAL BENEFITS will be paid *only after other insurance payments covering this loss are first deducted* as by POLICY PROVISIONS. See Article I, Paragraph "N" and "O".

Hazelett obtained "other coverage" through the Colonial Penn Franklin Insurance Company (Colonial Penn).

Hazelett made claim for $6,070.40 to Blue Cross for surgical and hospitalization charges incurred from June 6 through June 30, 1976. Blue Cross paid $4,614.44 to the hospital. The outstanding balance of $1,456.00 [1] was submitted to Blue Cross under Hazelett's major medical policy. Because she received a check from Colonial Penn for $210.00, Blue Cross deducted the Colonial Penn payment, and tendered 80% of the remaining balance—$996.80.[2]

Hazelett filed suit in the Grant Circuit Court alleging that the "other insurance" provision in the Blue Cross policy violated public policy. Hazelett sought $168.00 in actual damages and one million dollars in punitive damages. She also sought certification to proceed with the suit as a class action.

On Blue Cross' motion, the trial court dismissed the suit on the grounds that Hazelett had failed to exhaust her administrative remedies by challenging the disputed provision before the Indiana Insurance Commissioner.

Hazelett appeals.

## ISSUE

Hazelett raises but a single issue on appeal:

Did the trial court properly dismiss the suit because of failure to exhaust administrative remedies?

*PARTIES' CONTENTIONS*—Hazelett contends that she need not exhaust her administrative remedies because they are inadequate. As she was seeking actual damages, punitive damages, and attorneys' fees via a class action suit, items which the Commissioner did not have the power to award, she claims that resort to the administrative agency would have been a meaningless step.

Blue Cross replies that before challenging an insurance policy provision in the courts as being against public policy, Hazelett was required to exhaust any administrative remedies available to her, and that Ind.Code 27–8–5–1 required her to first challenge the provision before the Insurance Commissioner.

## DECISION

*CONCLUSION*—The trial court improperly dismissed Hazelett's action as there was no administrative remedy for Hazelett to exhaust.

Of necessity, the requirement of exhaustion of administrative remedies is contingent upon the existence of a remedy.

[1, 2] Blue Cross sees an administrative remedy for Hazelett in Ind.Code 27–8–5–1 (the Statute):

No policy of accident and sickness insurance shall be issued or delivered to any person in this state nor shall any application, rider or endorsement be used in connection therewith until a copy of the

---

1. Although the mathematical computation is not entirely correct, the parties have provided us no other figures with which to compute the proper amount.

2. 80% of $1,245.00.

form thereof and of the classification of risks and the premium rates, or, in the case of assessment companies the estimated cost pertaining thereto, have been filed with the commissioner. This section shall be applicable also to assessment companies and fraternal benefit associations or societies.

No such policy shall be issued, nor shall any application, rider, or endorsement be used in connection therewith, until the expiration of thirty (30) days after it has been so filed unless the commissioner shall sooner give his written approval thereto.

The commissioner may within thirty (30) days after the filing of any such form, disapprove such form (1) if in the case of an individual accident and sickness form the benefits provided therein are unreasonable in relation to the premium charged, or (2) if in the case of an individual, blanket, or group accident and sickness form it contains a provision or provisions which are unjust, unfair, inequitable, misleading, deceptive or encourage misrepresentation of such policy. If the commissioner shall notify the insurer which has filed any such form that it does not comply with the provisions of this section, it shall be unlawful thereafter for such insurer to issue such form or use it in connection with any policy. In such notice the commissioner shall specify the reasons for his disapproval and state that a hearing will be granted within twenty (20) days after request in writing by the insurer.

*The commissioner may at any time,* after a hearing of which not less than twenty (20) days' written notice shall have been given to the insurer, *withdraw his approval* of any such form on any of the grounds stated in this section. *It shall be unlawful for the insurer to issue such form* or use it in connection with any policy *after the effective date of such withdrawal of approval.* The notice of any hearing called under this paragraph shall specify the matters to be considered at such hearing and any decision affirming disapproval or directing withdrawal of approval under this section shall be in

writing and shall specify the reasons therefor. (emphasis supplied)

Specifically, Blue Cross maintains that a health insurance policy provision must first be challenged before the Insurance Commissioner before it can be challenged in court as being against public policy. This is not the purpose of this statute, and no Indiana case, nor any case we have found in any other jurisdiction, has required an exhaustion of administrative remedies before challenging an insurance policy provision in court. *See, e. g., Pinkus v. Southern Farm Bureau Casualty Ins. Co.* (E.D.Ark.1968), 292 F.Supp. 141; *M.F.A. Mutual Ins. Co. v. McKinley* (1968), 245 Ark. 326, 432 S.W.2d 484; *Furguson v. Phoenix Assurance Co. of New York* (1962), 189 Kan. 459, 370 P.2d 379; *Miles v. State Farm Automobile Ins. Co.* (Mo.App.1975), 519 S.W.2d 378.

■ Blue Cross leans heavily on *Insurance Commissioners of Indiana v. Mutual Medical Insurance, Inc.* (1968), 251 Ind. 296, 241 N.E.2d 56 to support its view that there was an administrative remedy available to Hazelett. In that case, the Indiana Podiatrists' Association, Inc. filed a complaint with the Insurance Commissioner charging that policy provisions which excluded coverage for services of podiatrists violated public policy. Our Supreme Court held that the Podiatrists' Association did not have legal standing and therefore could not be a party either to the administrative proceedings or to the judicial review of those proceedings. However, the court went on to state that the standing of the Podiatrists' Association was not required to put the issue of the policy provision before the Commissioner.

The personal merit, standing or legal interests and motives of a private complainant under these statutory provisions, are immaterial to the jurisdiction of the Insurance Commissioner, if the practice complained of is one in which the public generally has an interest. As a consequence, where a complaint is found to be of public interest generally, the nature of the interest of the complainant is insignificant and the hearing on the issues

may stand as if brought by the Commissioner on his own motion.

While the administrative agency has jurisdiction to conduct a hearing on the practices complained of, it does not follow that the complainant becomes a party to the action.

251 Ind. at 300, 241 N.E.2d at 59. This case merely demonstrates that even an individual or organization without proper legal standing may bring the issue of whether an insurance policy provision violates public policy to the attention of the Commissioner. But neither that case, nor the language of the statute contemplates a mandatory proceeding through which all challenges to insurance policy provisions must be routed. All of which is in keeping with Indiana cases involving the uninsured motorist statute, which have not required exhaustion before the Commissioner. *See Vantine v. Aetna Casualty & Surety Company* (N.D. Ind.1971), 335 F.Supp. 1296; *Simpson v. State Farm Mutual Automobile Insurance Company* (S.D.Ind.1970), 318 F.Supp. 1152; *Liddy v. Companion Insurance Company* (1979), Ind.App., 390 N.E.2d 1022; *Patton v. Safeco Insurance Company of America* (1971), 148 Ind.App. 548, 267 N.E.2d 859.

█ Back to the Statute which Blue Cross sees, somewhat myopically we conclude, as the source of an administrative remedy for Hazelett. The basic rules of statutory construction require that it be construed as a whole, *In re Big Raccoon Conservancy Dist. v. Kessler Farms Corp.* (1977), Ind.App., 363 N.E.2d 1004, giving words their plain, ordinary and usual meaning. *State v. Turner* (1979), Ind.App., 386 N.E.2d 208; *State v. Bress* (1976), Ind.App., 349 N.E.2d 229. On its face all it does is establish a procedure by which insurance policies and provisions must be approved by the Commissioner before they can be *lawfully. issued* by an insurance company. Without this approval, which may be withdrawn at any time, it is *unlawful* for an insurance company to issue a policy or provision. To do so would result in statutory penalties.[3] What is controlled is the action of insurance companies in issuing policies and the Commissioner's approval does not directly bear on the relationship between the insurance company and the policyholder.

There is no hint of establishing any type of administrative remedy for policyholders. In fact they are not mentioned. The Statute is limited to providing the manner in which insurance companies could gain the necessary approval to *lawfully issue* insurance policies . . . nothing more.

Thus, it would be an aberration to construe the Statute as requiring Hazelett to pursue a non-existent administrative remedy.

While we express no opinion as to the merits of Hazelett's claim, we do find that she cannot be denied her day in court because of her failure to exhaust what does not exist.

The judgment of the trial court is reversed and this cause remanded for further proceedings not inconsistent herewith.

SULLIVAN and SHIELDS, JJ., concur.

---

**3.** Ind.Code (1976) 27–1–20–4 (repealed by Acts 1978, P.L. 2, § 2728); replaced by Ind.Code (1979 Supp.) 27–1–2–4.