**Anthony OWENSBY, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 982 S 359.

Supreme Court of Indiana.

Sept. 4, 1984.

Susan K. Carpenter, Public Defender of Ind., C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., G. Douglas Seidman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Anthony Owensby was found guilty by a jury in the Grant County Circuit Court of the crime of robbery resulting in bodily injury, a class A felony and on July 2, 1981, was sentenced to a term of thirty (30) years.

Four issues are presented for our consideration in this direct appeal as follows: 1) denial of Defendant's motion for a mistrial and alternatively motion for a continuance based on surprise;

2) errors in admission of certain items into evidence;

3) denial of Defendant's motion for mistrial based on remarks of the prosecuting attorney broadcast over a local radio station; and

4) sufficiency of the evidence.

At about 2:00 p.m. on April 7, 1981, Malcolm Hall was in his home when he heard a knock at the door. When he opened the door two men asked him if he had marijuana to sell to which he responded negatively. When he went back into his home they followed him. Hall identified these two men as Defendant Leavell and Defendant-Appellant here, Anthony Owensby. Hall testified that he had never seen these men or sold marijuana to them before. He did admit to sometimes selling enough marijuana to cover the cost of keeping a supply for his own use, but insisted he was not a drug dealer. Hall stated he felt a push in the back and turned to find Leavell pointing a gun in his face. He said Owensby was carrying a hammer handle. They demanded that Hall produce marijuana and when Hall told him he had no marijuana, Leavell slapped him around. Hall's wife, Freema Hall, testified that she was in the upstairs bathroom when she heard a knock at the upstairs door. This door was accessible from an outside staircase. She went to the door but saw no one there. She then heard someone at the downstairs door and yelling so she went downstairs. Upon reaching the downstairs she was grabbed and pulled into the room by defendant Owensby. She said her husband, Malcolm Hall, and another person she identified as Leavell, were standing in the room. She was not able to positively identify Leavell. She stated she was not able to get out of Owensby's grip because he was too strong. He was holding a club and threatening to beat her if she tried to escape. Her testimony was that State's Exhibit 2, a hammer handle, looked very much like the club with which defendant Owensby threatened her. She stated that in the meantime, defendant Leavell was striking Malcolm Hall, pointing a gun at him, and demanding money and marijuana. Hall testified that, fearing for his wife's safety, he informed Leavell that all he had was $5.00 which he gave to Leavell, but Leavell continued to slap him. Hall then gave Leavell his wallet and watch and offered him his stereo if he would leave. Leavell then shoved Hall into a chair, slapped him again and started to leave, but then turned and shot at Hall. He shot a second time, striking Hall in the leg. Both defendants then fled. Hall ran upstairs, got his own pistol, and proceeded

after the defendants. Hall stated his gun was a large caliber weapon, difficult to conceal and was not on his person at the time Leavell shot him. He limped outside and encountered his neighbor, Johnson, and a Coca-Cola delivery man. One of them pointed to a black or dark blue car and indicated the fleeing men were escaping in it. Hall did not fire at the vehicle as he was afraid he might injure innocent bystanders. He then collapsed. Nathaniel Johnson, Hall's neighbor, stated that on April 7, 1981, at 2:00 p.m., he was sitting in his doorway, which overlooks the Halls' house. He observed two black males approach the Hall house and knock on the upstairs door. Malcolm Hall then appeared at the downstairs door and the men went to that door and entered the house. He heard scuffling sounds and Malcolm cry out in pain, which indicated to him Malcolm was being beaten. He then heard a series of shots, followed by the two men leaving the house, quickly walking around the house, and crossing the street. Johnson started toward Meyer's restaurant to make a telephone call to the police when he observed Malcolm run outside, jump a concrete wall and then fall into the street. He said Malcolm was very excited and was yelling about something. Malcolm then stated he had been shot and needed an ambulance. Johnson ran into Meyer's restaurant. He saw the two men who had come from the Hall house in a car on Washington Street. He took down the license number of the car on a Meyer's guest check and then called the police. There were four people in the car. When the police investigated this incident they were unable to find the spent bullet from the first shot fired by Leavell. Some time later, while Hall was sweeping the floor of his home, he found the spent bullet. He placed it in a cellophane cigarette wrapper and turned it over to the police. When Freema Hall returned to the house with Police Officer Drook, she found a hammer handle lying in the yard and pointed it out to Drook, who took it into police custody. Dr. Robert Jackson, a physician, testified that Malcolm Hall had been shot, but that it was not medically advisable to remove the bullet. An X-ray of Malcolm's leg was admitted into evidence as State's Exhibit 7.

Leavell and Owensby did not deny that they were at the Hall home at the time indicated. Their version of the incident was that they were there to purchase marijuana from Hall and not to commit a robbery. Leavell admitted he shot Hall but indicated it was in self-defense. Leavell and Owensby further denied that they took any items of property belonging to Hall.

I

The primary thrust of Defendant's claim of error here is that the trial court erred in refusing to grant either a mistrial or a continuance to this defendant and defendant Leavell at a point in the trial where co-defendants Dyson and Robinson pleaded guilty, out of the presence of the jury, and agreed to testify for the State against Owensby and Leavell.

Prior to trial both Owensby and Leavell had filed a motion for separate trials on grounds that they were aware Dyson and Robinson had given statements to the police and they would be prejudiced by the admissions of these statements against Dyson and Robinson. Their motion was pursuant to Ind.Code § 35–3.1–1–11(b) which gives the prosecutor the election to either, (1) provide he will offer no statements of any defendants and proceed with a joint trial, (2) provide for a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, or (3) provide for the granting of the motion for separate trials. The prosecutor here indicated he intended to offer no extra-judicial statements of any of the defendants and the trial court denied the motion for separate trials.

■ After approximately two or three days of trial, Dyson and Robinson entered guilty pleas and agreed with the State to testify against defendants Owensby and Leavell. Owensby now claims he was prejudiced because, since the court denied his

motion to sever, he spent several days in trial with these defendants and had acted in concert with them in preparing a defense. Because they were all identified together and had made a common defense, Defendant claims he was prejudiced by their reversal of position for it had encouraged the jury to find Defendant guilty also. The change of plea of the two co-defendants did not change the position the court faced in ruling on the motion for severance prior to trial. The State indicated it did not intend to put into evidence pretrial statements of any defendants and it did not do so. There is no indication nor claim by Owensby that the State was aware Dyson and Robinson would change their plea in mid-trial. The contention of Owensby that the in-trial change of plea created a danger that the jury would infer his guilt from the fact of the plea of the co-defendant has also been considered and rejected by the Court of Appeals in *Webb v. State*, (1980) Ind.App., 403 N.E.2d 359. The *Webb* court found that the appropriate inquiry is whether under all the circumstances the appellant was deprived of a fair trial by the prejudice allegedly arising from the change of plea, citing *Winker v. State*, (1977) 174 Ind.App. 258, 367 N.E.2d 26; *United States v. Fife*, (6th Cir.1976) 573 F.2d 369, cert. denied, (1977) 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 546; *United States v. Kimbrew*, (6th Cir.1967) 380 F.2d 538; *Koolish v. U.S.* (8th Cir.1965) 340 F.2d 513; *Slocum v. U.S.* (8th Cir.1963) 325 F.2d 465. Owensby and Leavell filed a motion for mistrial based on the change of plea and the attendant prejudice to them. Based on the holding in *Webb*, the trial court denied the motion. We find the trial court did not abuse his discretion in denying the motion for mistrial in the instant case. He found witnesses Dyson and Robinson would be available for cross-examination by these defendants and the new testimony did not change the circumstances upon which defendants had based their defense.

Owensby and Leavell then moved for continuance based on the surprise of the two new witnesses and this motion was also denied. The trial court, however, did not allow witnesses Dyson and Robinson to take the stand until the next day. The denial of a motion for continuance on a non-statutory ground is reversible only for an abuse of discretion. In order to show an abuse, of course, the defendant must show that he was prejudiced by the denial. *Downer v. State*, (1982) Ind., 429 N.E.2d 953; *Drollinger v. State*, (1980) Ind., 408 N.E.2d 1228; *Keys v. State*, (1979) 271 Ind. 52, 390 N.E.2d 148; *Aron v. State*, (1979) 271 Ind. 412, 393 N.E.2d 157; *Johnson v. State*, (1979) 271 Ind. 145; 390 N.E.2d 1005, cert. denied (1979) 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312; *Miller v. State*, (1978) 267 Ind. 635, 372 N.E.2d 1168. This Court held in *King v. State*, (1973) 260 Ind. 422, 296 N.E.2d 113, mere surprise is not reason enough to necessitate a continuance; the defendant must show he was harmed by the denial because of the surprise. It is the contention of the State that Defendant Owensby has shown no prejudice by the denial of his continuance since the testimony of Dyson and Robinson concerned only the instant crime and did not materially change the position or defense of the defendant. On this issue Defendant cites *Johnson v. State*, (1979) 179 Ind.App. 28, 384 N.E.2d 1035; and *Dennie v. State*, (1976) 170 Ind.App. 286, 352 N.E.2d 837, however, these cases do not support Defendant's contention. In *Dennie*, no motion for continuance had been made and the court merely acknowledged that a motion for continuance was an available option to Dennie. In *Johnson*, the State called a surprise expert witness. Johnson was charged with the murder of his girlfriend by shooting her with a handgun. The gun in question was a revolver which could be fired either single action or double action. Johnson's defense was that the shooting was accidental in that when he was attempting to handle the gun in the car, it became entangled in his coat and accidentally discharged. The State called a firearms expert who testified the handgun would not discharge unless a significant amount of pressure was applied directly to the trigger, thus undermining Johnson's

testimony that the gun discharged as a result of its entanglement in his coat. The expert testified at length as to the amount of pull necessary to fire the gun, either in single action with the gun cocked or double action, and indicated a minimum pressure would be four pounds to fire the weapon. The Court of Appeals found that under those circumstances the trial court abused its discretion by denying a continuance to the defendant based on the fact that this testimony substantially changed the circumstances upon which defendant had based his defense and precluded his obtaining an expert witness to attempt to rebut the testimony of the State's expert. Johnson was thus placed in a position of not being able to rebut the testimony of the expert witness by presenting his own expert testimony or by properly cross-examining the State's expert. A similar analysis was made by this Court in *Hergenrother v. State*, (1939) 215 Ind. 89, 18 N.E.2d 784, where the surprise witness testified as to the alleged commission by the defendant of other crimes wholly independent of that for which he was on trial. This Court found again in *Hergenrother*, that this testimony would not have been contemplated by the defendant and the defendant was not in a position to defend against the unrelated crimes. Therefore, the defendant should have been granted a continuance to face such testimony. Defendant here, however, was faced with witnesses who testified directly to the crime with which he was charged and did not have the nature of his defense materially changed. *Trinkle v. State*, (1972) 153 Ind.App. 524, 288 N.E.2d 165, *trans. denied*. Owensby did cross-examine witnesses Dyson and Robinson and does not now point out any prejudice resulting from the denial of his motion for continuance. We find no error on this issue.

## II

Defendant Owensby claims reversible error was committed by the trial court in admitting a gun into evidence, a hammer handle, a cigarette wrapper, a bullet, a chart, and photo-copies of waiver forms executed by the defendant.

The gun in question was offered by the State as its Exhibit No. 1. It matched Hall's description of the one used by Leavell at the time of this incident. In addition, James Robinson testified that the gun in question, identified as State's Exhibit 1, was his gun and that he had given it to defendant Owensby in the car immediately before the robbery and received it back from Defendant after he returned from the Hall residence. The gun had been obtained by the police from the home of one Velma Broomfield and was located in the bedroom used by Robinson's brother. There is, therefore, no question but that this Exhibit was adequately identified before being offered for admission into evidence. Defendant argues, however, that the gun was irrelevant because Defendant admitted the shooting of Malcolm Hall, claiming it was a matter of self-defense. He argues that since the only issue left to determine was whether or not he was on the premises to commit a robbery and did commit a robbery, the issue of the shooting was extraneous as it was not determinative of the robbery issue. This, of course, did not render the gun inadmissible. The State still had a right and a duty to present all of the evidence regarding its case. The facts were for the jury to determine and it was proper for all of the evidence and all of the issues to be before them to make that decision. Any inconclusiveness or weakness as to the relevance or even the identification of an item goes toward its weight and not its admissibility. *Johnson v. State*, (1980) 272 Ind. 547, 400 N.E.2d 132; *Carman v. State*, (1979) 272 Ind. 76, 396 N.E.2d 344.

Both Malcolm and Freema Hall told police that one of the assailants had used a hammer handle to threaten them during the commission of this robbery. Freema Hall later testified that she saw the hammer handle, identified as State's Exhibit 4, lying in her backyard when she was with Officer Drook getting ready to go to the police station to make a report. It

appeared to her to be the same club used by one of the assailants during the robbery. Police Officer Drook picked up the item and had it in his custody until the trial. Defendant objected to the admission of this item into evidence on grounds that it was not sufficiently identified and that there had not been a proper chain of custody to support its identification. Owensby's contention is based on the fact that Freema Hall was not able to say with certainty that this was the club wielded by one of the assailants. She said it looked very much like it and she detected scratches on it which helped her recognize it. Police Officer Drook had not put any identifying marks, such as initials, on the hammer handle, but he was able to say that this was the same item he picked up from the Hall yard and one of the identifying marks on it was a knothole that appeared at one end of it. As we already have stated, positive proof of an item of evidence is not necessary for it to be admissible. The weakness of the connection of the item to the defendant goes toward its weight and not its admissibility. *Johnson, supra; Carman, supra; Wash v. State*, (1980) Ind.App., 408 N.E.2d 634. Chain of custody, of course, is more significant with fungible items that cannot be identified by observing them and which lose their personal identity when mixed with like substances. No such problem exists with a piece of hard physical material such as this hammer handle. The testimony of Mrs. Hall and Officer Drook sufficiently identified this exhibit for its admission into evidence. *Graham v. State*, (1970) 263 Ind. 525, 255 N.E.2d 652; *Coleman v. State*, (1975) 264 Ind. 64, 339 N.E.2d 51; *Kolb v. State*, (1972) 258 Ind. 469, 282 N.E.2d 541, *reh. denied.* Any shortcomings in their identification went to the weight of the evidence to be resolved by the jury. There is no error on this issue.

State's Exhibits III and IV were a spent bullet found by Hall in his home and his cigarette wrapper, taken from the outside of a package of cigarettes, in which Hall wrapped the bullet when he found it. After the incident in question, police were unable to find the spent bullet from the first shot by Leavell fired at Hall. Later, when Hall was sweeping the room, he found the spent bullet in a corner. The only container he had available was the outside wrapping of a cigarette package, so he wrapped the spent bullet in it and turned it over to the police in that condition. The police kept the bullet wrapped in that container and presented it for admission into evidence in that form. Defendant's contention that there was not a proper chain of custody shown is without merit since these items were easily identified in their individual characteristics and were so identified by Hall and the police officer having custody of the items. The bullet, of course, was relevant and probative to support the testimony of the witnesses that two shots had been fired, one striking Hall and one going into the room past Hall's body. *Bailey v. State*, (1976) 264 Ind. 505, 346 N.E.2d 741. Defendant again claimed this evidence was irrelevant because Defendant admitted the shooting of Malcolm Hall and the only issue was whether or not a robbery had been committed. The State is correct in its contention, however, that they had a right to prove their case and could not be expected to count on Leavell to admit the shooting in Defendant's case in chief. The probative value of the cigarette wrapper is questionable. The State's contention is that the logic of its admission is that Malcolm Hall chanced upon this spent bullet and had to find something handy in which to put it and the inclusion of this wrapper with the bullet tends to show that Hall really did chance upon the bullet while sweeping the floor and did not fabricate the evidence, thus making it admissible. Nonetheless, the potential for prejudice to Defendant in the admission of the wrapper is negligible and error, if any, in its admission is harmless.

State's Exhibit VI, which the parties have referred to as a chart, was a drawing of the room in which this incident occurred, showing generally the dimensions of the room and the placement of furniture and items within it. Both victim

Hall and a police officer testified as to the accuracy of the chart. Its purpose was to assist witnesses in articulating what they viewed so that the jury could relate the testimony to the physical surroundings and to the testimony of other witnesses. Such a chart or drawing, to be admissible, need not be a perfect representation of the subject matter. *Sexton v. State*, (1974) 262 Ind. 554, 319 N.E.2d 829. The admission of such a diagram is within the discretion of the trial court and his determination will be reversed only for an abuse of that discretion. *Snyder v. State*, (1979) Ind.App., 393 N.E.2d 802, *trans. denied.* Defendant's contention that a proper foundation was not laid for the admission of this Exhibit is incorrect since victim Hall, himself, and an investigating police officer stated that it was accurate and depicted the scene as they saw it. The trial court therefore did not abuse its discretion in admitting State's Exhibit No. 6.

■ State's Exhibits 11 and 12 were photo-copies of waivers of rights forms of defendants Owensby and Leavell. Defendant's only objection to their admission was that since originals were available, photo-copies were not the best evidence and were not admissible. It has been well established, however, that a photo-copy is equally as admissible as the original of a document. *Wilson v. State*, (1976) 169 Ind.App. 297, 348 N.E.2d 90. There is, therefore, no merit to Defendant's attack on Exhibits 11 and 12. There is no error on this issue.

### III

■ Owensby claimed the trial court erred by denying his motion for mistrial based on the statements made by the prosecuting attorney over a local radio station. At the point where Dyson and Robinson entered their guilty pleas and agreed to testify for the State against Owensby and Leavell, the prosecuting attorney made statements over a local radio station to this effect. Apparently, the whole content of the statements was only that Dyson and Robinson had entered guilty pleas and were going to testify for the State against these remaining defendants. When this was brought to the attention of the trial judge, he asked each of the jurors personally, in his chambers, whether they had heard the broadcast and each of them indicated he or she had not. He admonished the jurors, at that time and before they were released from the court after the day's proceedings, that they were not to listen to any radio broadcast or read any newspapers that gave accounts of the cause before them. Defendant admits the trial court determined that none of the jury had heard the broadcast, and took extreme caution to insure that they had not been biased. Defendant also admits the court gave an intermediate instruction to the jury reinforcing his standing admonishment to not watch, read, or listen to news reports of the trial. He now claims, however, that he was placed in grave peril because of the potential prejudice to the jury in having available to them this information through radio and written media, and further claims the jury was subject to bias and prejudice by the *in camera* interviews with the judge on this subject. We first note the only thing stated in the broadcast was that Dyson and Robinson had changed their pleas and would become witnesses against the defendant. The jury found this out, of course, when this happened in the trial. Furthermore, it is well-settled that a jury need not be ignorant of all publicity or all public opinion on a case as long as they are willing to be impartial and decide the case only on the evidence presented. There is no showing that this was not true here. There is a showing that the trial judge took precautionary action adequate to meet the circumstances and properly found no prejudice. We therefore do not see any grounds for finding that the court abused his discretion by denying the motion for mistrial. *Irvin v. Dowd*, (1961) 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751; *Drollinger v. State*, (1980) Ind., 408 N.E.2d 1228.

### IV

■ Finally, Appellant claims there was not sufficient evidence from which the

jury could find he committed the crime of robbery. Our standard of review is well established that where there is substantial evidence of probative value to support the conviction, the finding of the trier of fact will not be disturbed on appeal. *Rowan v. State*, (1982) Ind., 431 N.E.2d 805, *reh. denied; Staton v. State*, (1982) Ind., 428 N.E.2d 1203. Appellant claims that the items Malcolm and Freema Hall testified were taken from them in the robbery were never recovered and their testimony alone as to the taking is unbelievable since they were admitted marijuana sellers. Recovery of stolen property and its production at trial are neither essential to prove a robbery was committed nor that Appellant committed it. *Mitchell v. State*, (1977) 172 Ind.App. 294, 360 N.E.2d 221, *trans. denied*. There was sufficient evidence before the jury from which they could find or infer all of the elements with which the defendants were tried and convicted. Appellant's contention that there was an insufficiency of the evidence is without merit.

The trial court is in all things affirmed.

GIVAN, C.J., and HUNTER, DeBRULER, and PRENTICE, JJ., concur.