135 N.J. Super. 6 (1975)
342 A.2d 549
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS WOOTEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 20, 1975.
Decided June 23, 1975.
*7 Before Judges KOLOVSKY, LYNCH and ALLCORN.
Mr. Arnold M. Mellk, Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney; Mr. Robert Martin, Designated Counsel, on the brief).
Miss Barbara Ann Villano, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KOLOVSKY, P.J.A.D.
Defendant was brought to trial on a ten-count indictment returned by the State Grand Jury *8 charging defendant, who was then an inmate in the New Jersey State Prison at Rahway, with having committed various crimes during the course of disturbances at the prison which occurred on November 24 and 25, 1971.
No evidence was offered by the State with respect to Counts IX and X charging, respectively, kidnapping (N.J.S.A. 2A:118-1) and false imprisonment (N.J.S.A. 2A: 85-1) of one Henderson. Those counts were dismissed, at the State's request, at the close of the State's case.
The jury found defendant not guilty on Counts I and VII charging him, respectively, with the kidnapping of Vukcevich, the prison warden, and Iorio, a prison guard. However, the jury found him guilty: on Count II charging false imprisonment of Vukcevich; on Counts III and IV charging assaults and batteries upon uniformed law enforcement officers, Gilgallon and Manyk (N.J.S.A. 2A:90-4); on Count V charging kidnapping of Monteyunas, a correction officer; on Count VI charging false imprisonment of Monteyunas; and on Count VIII charging false imprisonment of Iorio.
The trial court, on its own motion, set aside the verdict on Count VI charging false imprisonment of Monteyunas, ruling that it was a lesser included offense which merged into the conviction for kidnapping that victim, Monteyunas. Defendant's subsequent motions for a new trial and for a judgment of acquittal were denied. Defendant was sentenced to a term of 30 to 31 years on the kidnapping conviction (Count V) and to terms of two to three years on each of the other convictions (Counts II, III, IV and VIII). All sentences were made concurrent with each other and with the sentence defendant was then serving.
Defendant appeals arguing six points for reversal. We find no merit to any of them.
Defendant's principal attack is on his conviction for kidnapping Monteyunas for which the statute, N.J.S.A. 2A:118-1, provides a mandatory minimum penalty of 30 *9 years. The attack is embodied in the first four points of his brief, captioned as follows:

Point I The trial court erroneously instructed the jury as to
 the definition of kidnapping (plain error).
Point II There was not sufficient evidence before the Grand Jury
 to sustain the kidnapping indictment.
Point III It was an abuse of prosecutorial discretion to indict
 defendant for kidnapping John Monteyunas.
Point IV The trial court erred in not granting defendant a new
 trial (raised in part below).

There is no substance to any of those points or to the arguments set forth therein.
The kidnapping statute, N.J.S.A. 2A:118-1 provides in pertinent part:
Any person who kidnaps or steals or forcibly takes away a man, woman or child, and sends or carries, or with intent to send or carry, such man, woman or child to any other point within this state, or into another state, territory or country, * * * or who procures any such act to be done, is guilty of a high misdemeanor, and shall be punished by imprisonment for life, or for such other term of not less than 30 years as the court deems proper.
Contrary to what defendant argues, the State's proofs were more than sufficient to support the jury's finding that defendant had violated the statute  that he had participated in the forcible and unlawful asportation and detention of Monteyunas who was held as a hostage during negotiations between the prison inmates and the prison administration.
We need refer only to the testimony of correction officers Monteyunas, Koetsier and Iorio which the jury was entitled to credit.
Sometime between 9:30 and 10 P.M. on November 24, 1971 as Monteyunas was locking prisoners in on the eighth, the top, tier of a section of the prison known as "Four-Wing," he was struck in the back of the head by an inmate named Harris. His keys were taken from him and he was again struck by Harris. Another inmate, Henderson, helped Monteyunas to his feet and placed him in a cell on the eighth *10 tier, at the same time furnishing the officer with his (Henderson's) prison garb to wear over the officer's uniform.
About 45 minutes later, another inmate, Cartner, found Monteyunas in the cell, stripped him of the inmate's uniform and called for defendant Wooten. Wooten came into the cell, grabbed Monteyunas by the belt and pulled him outside the cell where other inmates were standing. Monteyunas was struck by a number of inmates and dragged by Wooten, still holding onto the victim's belt, some 700 feet into Cell 25, a cell on the fourth tier, two floors below the eighth tier. Other inmates kicked and struck the victim as he was dragged by Wooten down the staircase to the lower tier.
Two other correction officers, Iorio and Koetsier, were already in Cell 25, tied hand and foot. Wooten didn't leave until another inmate had tied Monteyunas' hands and feet and placed him on a footlocker. Monteyunas remained in Cell 25 for about 24 hours, during which time Wooten entered the cell on about three to five occasions.
According to Iorio, defendant Wooten was in charge and on one occasion told the hostages that they "would not be hurt or bothered as long as the State Police did not come in." Shortly after midnight, Wooten entered Cell 25 and asked one of the officers to go with him to get a doctor for the warden. Iorio was taken out by Wooten and returned in about five or six minutes, after being taken to a point on the second floor to talk with prison officials who were in the center rotunda. Wooten and two others then took Iorio back to Cell 25.
Shortly after 6 P.M., Wooten came back and announced "that they wanted to exchange someone for newspaper men." The three correction officers decided that since Iorio had a broken arm, he would go. Iorio was untied and taken by Wooten to the top of the stairs from whence two other inmates brought him downstairs only to be returned to Cell 25 and re-tied when an inmate below indicated that no exchange was then to be made.
*11 At about 9 p.m. Wooten came in and said to Iorio, "come on * * *. The newspaper men are downstairs. We're going to see if we can exchange you for newspaper men, if they come in." Wooten remained on the second tier platform. The other two inmates took Iorio to a lower floor. There he was released in exchange for permission granted by a lieutenant of correction officers so that newspaper men might enter the area controlled by the inmates. Monteyunas and Koetsier were eventually released at about 10 p.m. by a group of other inmates who led them down, back of the cell sections, to the center rotunda area.
The proofs thus outlined were more than sufficient to support a finding that the State had proven beyond a reasonable doubt the elements of the crime of kidnapping  the unlawful, and here forcible, asportation and detention of the victim. State v. Hampton, 61 N.J. 250, 272-276 (1972); State v. Ginardi, 111 N.J. Super. 435, 438-441 (App. Div. 1970), aff'd o.b. 57 N.J. 438 (1971); see also People v. Adams, 389 Mich. 222, 205 N.W.2d 415, 59 A.L.R.3d 1288 (Sup. Ct. 1973); Annotation, "Seizure of prison officials by inmates as kidnapping," 59 A.L.R.3d 1306 (1974).
Defendant's suggestion that the element of asportation had not been proven  in a case in which the victim was dragged a distance of more than 700 feet to a cell two floors below  lacks a shadow of substance. Nor is there any merit to his contention that the kidnapping may have been merely incidental to a "lesser underlying crime" such as assault and battery or false imprisonment and, hence, not to be deemed a separate event warranting separate prosecution.
The assaults and batteries were committed during the course of the kidnapping; they were not the underlying crimes. The underlying crime was kidnapping  an aggravated species of false imprisonment  a crime whose purpose was the taking and holding of a hostage.
Defendant's reliance on several recent cases which have held that an asportation and detention of a victim is not kidnapping *12 where it is merely incidental to an underlying crime, e.g. robbery or rape, and does not substantially increase the risk of harm to the victim, is misplaced. Here, the underlying crime was kidnapping. Moreover, even those cases and the authorities which recommend the adoption of that rule recognize that the new rule they espouse has no application to situations  such as exist here  where the victim was held as a hostage. In such cases, any unlawful or forcible removal and detention will suffice. See Final Report of New Jersey Criminal Law Revision Commission, sec. 2C: 13-1(a) and Commentary p. 184; People v. Adams, supra, 205 N.W.2d at 422.
In summary, we are satisfied that, contrary to what defendant argues, the court's charge was proper; the evidence, both before the Grand Jury and the trial jury, was sufficient to sustain the kidnapping charge; the return of an indictment charging that offense was not an abuse of discretion; and the court ruled properly in denying defendant's motion for a new trial.
Defendant's remaining two points require only brief comment. The first involves an attack on N.J.S.A. 2A:85-1 which reads in pertinent part as follows:
* * * false imprisonments * * * and all other offenses of an indictable nature at common law, and not otherwise expressly provided for by statute, are misdemeanors.
Defendant contends that the statute, as it pertains to false imprisonment, "is unconstitutionally vague on its face" because it does not expressly spell out the elements of the crime of false imprisonment and thus makes it necessary to look to the common law for a precise definition of false imprisonment. The contention lacks merit. State v. Crusius, 57 N.J.L. 279, 283 (Sup. Ct. 1894); State v. Bynes, 109 N.J. Super. 105, 107 (App. Div. 1969), aff'd o.b. 55 N.J. 408 (1970), cert. den. 398 U.S. 941, 90 S.Ct. 1851, 26 L.Ed.2d 275 (1970); see also State v. Lair, 62 N.J. 388, 394 (1973).
*13 Nor is there any validity to defendant's contention that the State Grand Jury had no jurisdiction to return the indictment here involved. State v. Anderson, 120 N.J. Super. 345 (Law Div. 1972), aff'd 132 N.J. Super. 231, 233 (App. Div. 1975), certif. den. 68 N.J. 143 (May 6, 1975).
The judgments of conviction are affirmed.