347 So.2d 414 (1977)
STATE of Florida, Appellant,
v.
Jimmie L. SIMPSON, Appellee.
STATE of Florida, Appellant,
v.
Melvin BENJAMIN, Appellee.
STATE of Florida, Appellant,
v.
Joel R. HANUKAH, Appellee.
Nos. 48426, 48595 and 48596.
Supreme Court of Florida.
June 2, 1977.
Robert L. Shevin, Atty. Gen., and William I. Munsey, Jr., Asst. Atty. Gen., for appellant.
Philip J. Padovano of Ruiz, Padovano & Schrader, St. Petersburg, for appellees.
OVERTON, Chief Justice.
We review these consolidated cases on direct appeal from the Pinellas County *415 Court. In each case the trial court dismissed informations filed against defendants, declaring Florida's statute on unlawful assembly, Section 870.02, to be unconstitutional because it abridged defendants' First Amendment right to freedom of assembly. We have jurisdiction.[1]
Section 870.02[2] makes it unlawful for three or more persons to meet in order "to commit a breach of the peace, or to do any other unlawful act." The trial court found the statute neither vague nor overbroad, construing "unlawful act" to mean unlawful criminal act. Nevertheless, it held that:
"... [T]he Statute in question violates the First Amendment to the United States Constitution in that it attempts to regulate conduct which is protected by the Freedom of Assembly Clause contained in the First Amendment; in that it seeks to make criminal the coming together without requiring affirmative action in furtherance of the breach of peace or other unlawful act... ."
We disagree.
In State v. Beasley, 317 So.2d 750 (Fla. 1976), we upheld the related riot statute,[3] Section 870.01, Florida Statutes, and held the term riot must be defined as it was understood at common law since it was not expressly defined in the statute. We further required that each of the common law elements of the offense must be established by the circumstances of the incident and the charging document must include the,
"... facts which establish that three or more persons acted with a common intent to mutually assist each other in a violent manner to the terror of the people and a breach of the peace."[4]
We have similar situations in the instant cases. The term unlawful assembly as used in the statute may be defined in accordance with the common law definition. State v. Beasley, 317 So.2d 750 (Fla. 1975); Fields v. State, 85 So.2d 609 (Fla. 1956); Smith v. State, 80 Fla. 315, 85 So. 911 (1920).
The common law had both narrow and broad definitions for unlawful assembly.[5] The narrow view regarded unlawful assembly merely as a lesser included offense to riot, i.e., assembly of three or more persons with the common intent to riot, but without actually executing the violent action necessary to riot. Supra note 5.
The broad view required only a common purpose among the members of the assembly, and assembly in a manner which caused apprehension in the neighborhood of a breach of the peace. It did not necessarily require there be a purpose to riot or even any unlawful purpose. The broad definition resulted from expansion of the original narrow view. See 1 W. Hawkins, Pleas of the Crown 516 (8th ed. 1824); 8 W. Holdsworth, A History of the English Law 324-26 (2d ed. 1937).
The statutory provision for unlawful assembly is obviously designed to make unlawful an assembly in which those assembled have the intent to do an unlawful act which threatens a breach of the peace. The basic common law elements apply. Accordingly, we construe Section 870.02 to prohibit (1) an assembly of three or more persons who, (2) having a common unlawful purpose, (3) assemble in such a manner as to give rational, firm, and courageous persons in the neighborhood of the assembly a well-grounded fear of a breach of the peace.[6]
*416 It is no abridgement of free speech or assembly to make criminal an assembly which has as its purpose the breach of the peace. We hold Section 870.02, Florida Statutes (1975), which establishes the offense of "unlawful assembly," to be constitutional subject to the following restrictive limitations:[7] The term "unlawful assembly" as used in the statute is defined in accordance with the definition as set forth in this opinion; each of the itemized elements of the offense must be established by the circumstances of the incident; and the charging document must articulate the facts which establish each of those elements.
With reference to the specific facts in the instant cases we find that the informations in each instance charge that each of the individual appellees on a specific date and place,
"did then and there meet together with two or more persons to commit a breach of the peace, or to do any other unlawful act... ."
The facts are not sufficiently before us, and the informations as drawn are clearly inadequate. Florida Rules of Criminal Procedure 3.140(b) and 3.140(d)(1); State v. Beasley, supra.
We reverse the holding of the trial judge that the statute is unconstitutional, but affirm the dismissal of the informations on grounds that they fail to properly state an offense under the statute, without prejudice to the State to file amended informations.
These causes are remanded for further proceedings consistent herewith.
It is so ordered.
ADKINS, ENGLAND and SUNDBERG, JJ., concur.
SUNDBERG, J., concurs with an opinion.
BOYD, J., dissents with an opinion.
HATCHETT, J., dissents.
SUNDBERG, Justice, concurring.
I concur in the majority opinion because as construed and limited, I believe Section 870.02, Florida Statutes (1975), satisfies federal and state constitutional requirements. I believe there is implicit in the majority holding a determination that the alternative purpose of assembly proscribed by the statute, i.e., "... or to do any other unlawful act, ..." may not be constitutionally prohibited due to the overbreadth inherent in such phrase and consequent infringement on the protected freedom of speech and assembly. I would have the opinion expressly so hold.
BOYD, Justice, dissenting.
In my opinion the statute reviewed here is defective because it makes a crime out of the exercise of the First Amendment freedoms of assembly and speech. The restrictions placed by the majority opinion upon the definition of an "unlawful assembly" do not cure this fatal defect. The statute continues to prohibit the mere assembly of people. It is stressed by the majority that an assembly, to be illegal, must have a "common unlawful purpose." However, a purpose is merely an expression of intent or desire. If it is not acted upon to any degree then it remains merely an expression, and is protected by the First Amendment guarantee of freedom of speech. Thus, we have two of our most fundamental rights involved in this statute, enforcement of which requires the violation of both.
There are many criminal statutes which punish overt criminal acts of unlawfulness. And there are others which can prevent disorder by punishing the beginning steps of such criminal acts. Traditionally, the earliest point at which incipient criminal behavior can be punished within the limits of due process is represented by the conspiracy statutes. But these statutes do not punish the assembling of people to create an illegal goal  the assembly becomes criminal *417 only when an actual agreement is reached to commit a criminal act.[1] This element is crucial to the constitutionality of the conspiracy statutes, since otherwise they would prohibit mere assembly or speech.
The statute in question provides criminal penalties for assembling in a group which has an unlawful purpose, as if this may somehow be inferred on a group level and attributed to every member of the group, without any proof of an agreement among the members or of the acquiescence of the individual charged. It is clear that under the conspiracy laws a person cannot be convicted for merely associating with conspirators. As the Fifth Circuit stated: "It is elementary that neither association with conspirators nor knowledge of illegal activity constitute proof of participation in a conspiracy."[2] But the statute in question goes beyond the limits of the conspiracy statutes and punishes a person for merely associating with others who may have unlawful intentions. This exceeds traditional limits placed upon punishment for the mere possibility of crime.
If the "common unlawful purpose" of the assembly is not expressed in overt acts, then it can only be gleaned from the thoughts or words of those assembled. But it is only when thoughts and words become acts that they are subject to criminal penalties. As we made clear in White v. State:[3]
"We hold that mere words, when used as a tool of communication, are constitutionally protected. The protection fails only when (1) by the manner of their use, the words invade the right of others to pursue their lawful activities or (2) by their very utterance, they inflict injury or tend to incite an immediate breach of the peace." 330 So.2d at 7.
If a group of people should congregate that is their right. If they talk among themselves their speech is protected. Even if they discuss ideas which are repugnant to the community and express violent or otherwise distasteful desires, their assembly and speech remain protected. Only when their speech goes beyond the communication of ideas and becomes a criminal act, such as the incitement of others to imminent violence or the formation of a criminal conspiracy, does it lose its protection. If the generalized expressions of those assembled become specific and threatening, or if the individuals exercise their rights of assembly and speech in an unduly loud or obtrusive manner, then the law becomes effective to prevent them. Otherwise they are within the protection of the First Amendment.
By this statute the law begins to punish at the point where people have merely gathered together, at a time when their purported "common unlawful purpose" is merely the inference of neighbors. The threat to public welfare is too speculative to allow such an imposition upon the rights of free association and speech.
As we stated in State v. Beasley,[4] construing the anti-riot statute (Section 870.01, Florida Statutes), for speech to constitute an incitement to riot the state must allege and prove "circumstances justifying a clear and present danger of a riot in accordance with its elements as heretofore set out and that the language used by the defendant tended to incite the persons assembled to an immediate breach of the peace." There are no such limitations found in our construction of Section 870.02. As the statute is now drafted and construed, constitutionally protected speech and association could be criminally punished.
It is difficult to conceive of a situation in which people could "assemble in such a manner as to give rational, firm, and courageous persons in the neighborhood of the assembly a well-grounded fear of a breach *418 of the peace" without committing acts which are adequately proscribed by other, constitutionally valid, penal statutes. If the crowd were armed, or were making threats to passersby, or were trespassing, the situation would come within the proscription of a number of valid criminal statutes. Should there be rioting, or the incitement to riot, the case would be adequately covered under Section 870.01, which we held constitutional in Beasley, supra. Should there be an express agreement to commit a crime, then a conspiracy would be established under Section 777.04. But if the crowd were peacefully gathered, and the "common unlawful purpose" was to be gleaned merely from their words, uttered in a lawful manner, then it is hard to understand how this could cause well-grounded fear in a rational and courageous person. Thus, the statute is not only unconstitutional but redundant, since by its construction it is virtually impossible to violate without incurring a criminal penalty under a more valid penal statute. The statute allows a person who is doing nothing more than exercising his First Amendment freedoms to be criminally punished. This is precisely what is meant by overbreadth.
This statute, which affects so vitally the freedoms of association and speech, is too broadly drawn to be saved by restrictive interpretation. It is an unconstitutional law which can only produce more harm than good. It is useless, yet dangerous, and should be eliminated.
For these reasons, I must respectfully dissent.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] § 870.02, Fla. Stat. (1975), reads:

"Unlawful assemblies.  If three or more persons meet together to commit a breach of the peace, or to do any other unlawful act, each of them shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083."
[3] § 870.01(2), Fla. Stat. (1975), which reads in its entirety:

"All persons guilty of a riot, or of inciting or encouraging a riot, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."
[4] State v. Beasley, 317 So.2d at 753.
[5] Compare, e.g., 6 Coke's Third Institutes ¶ 79, at 175 (1809) with Reg. v. Vincent, 9 Car. & P. 91, 173 Eng.Rep. 754 (1839).
[6] Reg. v. Vincent, supra note 5 at 756, 62; Reg. v. Graham, 16 Cox C.C. 420 (1888).
[7] We do not read Callender v. Florida, 383 U.S. 270, 86 S.Ct. 924, 15 L.Ed.2d 749 (1966), to declare the statute to be facially unconstitutional. The restrictive construction we now make saves the statute from similar future dispositions.
[1] Pearce v. State, 330 So.2d 783 (Fla. 1st DCA 1976); U.S. v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975).
[2] Roberts v. U.S., 416 F.2d 1216, 1220 (5th Cir.1969).
[3] 330 So.2d 3 (Fla. 1976).
[4] 317 So.2d 750 (Fla. 1976).