409 So.2d 1031 (1982)
Autley MOBLEY, Appellant,
v.
STATE of Florida, Appellee.
David Leroy BROWN, Appellant,
v.
Louie L. WAINWRIGHT, Etc., Appellee.
Jerry STYLES, Appellant,
v.
State of Florida, Appellee.
Nos. 59051, 59359 and 59725.
Supreme Court of Florida.
January 28, 1982.
*1032 Jack O. Johnson, Public Defender and Douglas A. Lockwood, Asst. Public Defender, Bartow, Florida, for appellants.
Jim Smith, Atty. Gen. and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
BOYD, Justice.
We have before us three consolidated appeals resulting from a prison riot which occurred on the second floor of the Pinellas County jail on September 15, 1979. We have jurisdiction because the trial judge upheld the constitutionality of section 870.03, Florida Statutes (1979). Art. V, § 3(b)(1), Fla. Const. (1972).
Autley Mobley, David Brown, Jerry Styles, and a few other inmates on the second floor of the Pinellas County jail planned an escape. Pursuant to this plan the two guards working on that floor, Kenneth Will and Joseph Sandville, were grabbed, tied up, and placed in one of the cells. Then the defendants and their cohorts began trying to pry some bars loose from a window and releasing all the other inmates. Joseph Ciarciaglino, a private attorney who had entered the second floor to visit a client, was also taken captive and placed with the two guards. Soon the inmates realized that their activities had been *1033 discovered and that the police had surrounded the prison. At this point bedlam broke loose. Some inmates ransacked and set fire to the chaplain's office while others armed themselves with broken broom and mop handles. Mr. Ciarciaglino was taken to a window to negotiate for the prisoners and threats were made against the guards. Later some other inmates not involved in the attempted escape locked themselves and the two guards in another cell. Then the police stormed the floor, freed Ciarciaglino, and forced all the inmates into one cell. The whole ordeal lasted about three hours.
Mobley, Brown, and Styles were charged with rioting, attempted escape, and kidnapping. Mobley and Brown were each charged with three counts and Styles with two counts of kidnapping. Despite their objections their cases were consolidated for trial. Declaring section 870.03 constitutional, the trial judge denied their motions to dismiss the rioting portion of the information. The jury found each of them guilty of all the charges, and the trial judge sentenced each defendant to fifteen years for escape, five years for rioting, and twenty-five years for each count of kidnapping, with the sentences to run consecutively. The judge retained jurisdiction over the first third of each defendant's sentence pursuant to section 947.16(3), Florida Statutes (1979).
Mobley timely filed a notice of appeal with this Court. Styles timely filed a notice of appeal with the District Court of Appeal, Second District, which later transferred the case to this Court. Brown's notice of appeal filed with this Court was dismissed for being untimely filed, but he was allowed to file a belated appeal by petitioning for a writ of habeas corpus, pursuant to Baggett v. Wainwright, 229 So.2d 239 (Fla. 1969). Once all three appeals were properly before us, we consolidated them for purposes of this opinion.
Appellants raise several points on appeal. They argue that section 870.03 is unconstitutional; that the informations charging them with rioting were invalid for failure to state an essential element of the crime; that the court erred in imposing judgments and sentences for kidnapping because the kidnappings were incidental to the offense of attempted escape; that the court abused its discretion in limiting cross examination of a state's witness; and that the court erred in retaining jurisdiction over one third of each of their sentences pursuant to section 947.16(3).
In addition appellant Styles raises two more points: whether there was sufficient independent proof of his involvement in the conspiracy to escape to justify the admission of hearsay testimony under the co-conspirator exception to the hearsay rule and whether there was sufficient evidence to support his convictions for kidnapping. Since we find no reversible errors, we affirm the convictions and sentences, but we remand these cases to the trial judge to explain why he retained jurisdiction over the first third of each appellant's sentence.
Appellants argue that section 870.03 is unconstitutionally vague and that it violates their right to freedom of assembly. These arguments mimic the arguments found wanting in State v. Simpson, 347 So.2d 414 (Fla. 1977), appeal dismissed, 434 U.S. 961, 98 S.Ct. 498, 54 L.Ed.2d 447 (1977), and State v. Beasley, 317 So.2d 750 (Fla. 1975). In Beasley we upheld the constitutionality of section 870.01(2), Florida Statutes (1973), which prohibits riots, by construing the statute in terms of the common law definition of riots. Similarly, in Simpson we adopted the common law definition of unlawful assembly in construing section 870.02 so as to render it constitutional. We construed section 870.02 as prohibiting "(1) an assembly of three or more persons who, (2) having a common unlawful purpose, (3) assemble in such a manner as to give rational, firm, and courageous persons in the neighborhood of the assembly a well-grounded fear of a breach of the peace." 347 So.2d at 415 (footnote omitted).
This definition also applies to section 870.03 which reads:
If any persons unlawfully assembled demolish, pull down or destroy, or begin to demolish, pull down or destroy, any *1034 dwelling house or other building, or any ship or vessel, each of them shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Since participating in an unlawful assembly is a misdemeanor, it is obvious that the purpose of this section is to provide a more severe punishment for those participants in unlawful assemblies who begin to destroy a building or ship. Because we construe this section to include the common law elements of unlawful assembly, we find that it is not unconstitutionally vague and that it does not violate the first amendment right to freedom of assembly. State v. Simpson.
Appellants next claim the court erred in not dismissing the rioting count of the information for its failure to allege the statutory elements and to specify the facts showing them. See State v. Simpson; State v. Beasley. An information should not be dismissed unless it "is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense." Fla.R.Crim.P. 3.140(o). In this case the informations charged that the appellants
while in the Pinellas County Jail did then and there unlawfully assemble with two or more persons and did demolish, pull down or destroy, or begin to demolish, pull down or destroy a building, to-wit: the Pinellas County Jail, 401 Markley Street, Clearwater, Pinellas County, Florida.
Unlike the informations in Simpson and Beasley, these informations did allege with sufficient precision and particularity the facts which constituted the crime. Appellants were neither misled nor embarrassed in the preparation of their defenses nor exposed to double jeopardy. Therefore the court did not err in denying their motions to dismiss the informations.
As their third point appellants claim that their kidnapping convictions should be reversed since their conduct in confining the guards and the attorney was merely incidental to their attempted escape. Appellants were convicted under Florida's new kidnapping statute, section 787.01, Florida Statutes (1979),[1] which has not yet been construed by this Court. Specifically, appellants were convicted under subsection 787.01(1)(a)2., which prohibits the unlawful confining of another person with the intent to commit or facilitate the commission of any felony. If construed literally this subsection would apply to any criminal transaction which inherently involves the unlawful confinement of another person, such as robbery or sexual battery. Appellants cite three district court of appeal cases which have resolved this dilemma by construing this subsection not to include confinement that is inconsequential or inherent in the nature of the related felony. See Ayendes v. State, 385 So.2d 698 (Fla. 1st DCA 1980); Friend v. State, 385 So.2d 696 (Fla. 1st DCA 1980); Harkins v. State, 380 So.2d 524 (Fla. 5th DCA 1980); See also Bass v. State, 380 So.2d 1181 (Fla. 5th DCA 1980).
The prevalent view nationwide is that kidnapping statutes, regardless of their wording, do not apply to unlawful confinements or movements incidental to other felonies.[2] Most courts have reasoned that the *1035 legislatures did not intend for the statutes to be literally applied.[3] Some reasoned that a narrow construction of the statutes was necessary to prevent the abuse of prosecutorial discretion.[4] One court has suggested that a literal application of its kidnapping statute would be a violation of due process.[5] Despite the uniform consensus that kidnapping statutes should not be applied to those confinements or movements of other persons which are merely incidental to the commission of another crime, there is a great discrepancy among the various courts as to when such confinements and movements become more than incidental.[6]
Situations where prisoners have confined persons against their will with the intent of escaping from prison present their own special problems.[7] The courts have not hesitated to uphold kidnapping convictions where a prisoner forces another person to accompany him off prison grounds,[8] and where a prisoner confines someone after he has escaped from the prison.[9] A problem arises when, during an escape attempt, a prisoner confines or moves another person within the prison walls. In such instances the courts have closely examined the facts to determine whether the confinement or movement was incidental to the escape or whether it took on an independent significance justifying a kidnapping conviction.
There have been two cases where the courts have reversed the kidnapping convictions on the basis that the confinement or movement of a prison guard was merely incidental to the escape. In State v. Dix, 282 N.C. 490, 193 S.E.2d 897 (1973), the North Carolina Supreme Court, applying the common law of kidnapping, reversed the conviction of a person who drew a gun on a jailer, marched him back sixty-two *1036 feet, locked him in a jail cell, and then released other inmates. In People v. Fain, 18 Cal. App.3d 137, 95 Cal. Rptr. 562 (1971), a California Court of Appeal reversed the kidnapping conviction of an inmate who, along with five other inmates, held a knife on a guard, forced him to accompany them to the first floor of the prison, and then let him go when they reached the outside door. In applying the two-pronged test used by the California Supreme Court in construing California's kidnapping statute,[10] the court found that the movement of the officer was merely incidental to the escape and that it did not substantially increase the risk of harm to him.
In a similar case another California appellate court reversed the kidnapping conviction but for a slightly different reason. In People v. Gibbs, 12 Cal. App.3d 526, 90 Cal. Rptr. 866 (1970), two inmates forced a guard and two trusties into a jail cell but were apprehended before they could escape. The appellate court discussed at length the prison's large size and stated that the victims were forced to walk the equivalent of two city blocks. It decided that whether such movement was merely incidental to the escape attempt and whether there was substantial increase in the amount of risk to the victims were questions of fact to be determined by the jury. Since the jury instructions were erroneous, the court modified the kidnapping convictions to the lesser included offense of false imprisonment.
The Supreme Court of Michigan also reversed the kidnapping conviction of an inmate because of an erroneous jury instruction. In People v. Adams, 389 Mich. 222, 205 N.W.2d 415 (1973), Adams and two other inmates pulled knives on a prison officer and forced him to accompany them to the prison hospital 1500 feet away. At the hospital they seized two guards, a prison doctor, and another inmate. They held their victims hostage while they discussed their grievances with the prison officials and a newspaper reporter. After five and a half hours they surrendered. The Supreme Court reversed the conviction for kidnapping since the jury was not instructed that the crime of kidnapping does not include movement that is incidental to another underlying lesser crime. In so holding the court stated that the jury if properly instructed could have found Adams guilty of kidnapping if his purpose was to use the victims as hostages to extort more favorable prison conditions even though the movement was incidental to that purpose.
There is now a definite trend toward adopting the suggestion in Adams that the "merely incidental" rule does not apply in situations where the purpose in confining or moving another person is to use that person as a hostage.[11] In State v. Wooten, 135 N.J. Super. 6, 342 A.2d 549 (1975), an inmate was convicted of kidnapping a guard during the course of a riot. The court upheld the conviction, stating:
Defendant's reliance on several recent cases which have held that an asportation and detention of a victim is not kidnapping where it is merely incidental to an *1037 underlying crime, e.g. robbery or rape, and does not substantially increase the risk of harm to the victim, is misplaced. Here, the underlying crime was kidnapping. Moreover, even those cases and the authorities which recommend the adoption of that rule recognize that the new rule they espouse has no application to situations  such as exist here  where the victim was held as a hostage. In such cases, any unlawful or forcible removal and detention will suffice.
135 N.J. Super. at 11-12, 342 A.2d at 552. The Superior Court's decision was affirmed by an equally divided Supreme Court. State v. Wooten, 73 N.J. 317, 374 A.2d 1204 (1977).
The same result was reached in Kansas, which has a kidnapping statute similar to Florida's.[12] In State v. Dunn, 223 Kan. 545, 575 P.2d 530 (1978), the defendant and two other inmates at a reformatory walked into an instructor's office and held him and his secretary hostage for five hours during which time they made demands and threatened to kill the victims. The information charged the defendant with confining the two employees with the intent to hold them hostage and with the intent to facilitate the commission of a crime. The Supreme Court upheld the conviction, finding that the evidence was sufficient to establish that the two victims were confined with the intent to hold them as hostages and with the intent to facilitate the commission of the crime of aggravated escape. Implicit in the court's decision is the holding that the confining of the two victims was not slight, inconsequential, or merely incidental to the crime of aggravated escape.
By the same reasoning appellants' convictions for kidnapping should be affirmed.[13] They acted in concert with other inmates in confining the guards and the attorney with the intent to escape. This confinement was not incidental to the attempted escape once they began using them as hostages and threatening physical harm. Although appellants were not charged with confining the victims with the intent of using them as hostages, evidence that they did use them as hostages is relevant and sufficient proof that the kidnappings were not incidental to the attempted escape. The evidence shows that the confinement of the victims was significantly independent of the crime of escape and that it substantially increased the risk of harm to the victims.
Appellants' fourth point on appeal is that the trial court erred in limiting one of the defense counsel's cross examination of a state's witness, Charles Bargman. The defense counsel was trying to impeach Bargman who was involved in the prison riot. Bargman had already testified that he had pled nolo contendere to charges of kidnapping, riot, and escape and that he understood that he would get five to fifteen years if he cooperated with the state. Defense counsel asked him what his attorney told him he would get if he did not cooperate. When the state objected to the defense's inquiring about privileged communications, the court insisted that the attorney-client privilege remain inviolate. The defense counsel stated that he believed the witness may have waived his privilege and asked to proffer some other issues.
In the jury's absence Bargman testified that he had a conversation with his lawyer in the holding cell at the jail. When asked if his attorney told him that if he did not cooperate he would get in excess of thirty years he answered, "Something like that." The court then explained to Bargman the attorney-client privilege, and Bargman *1038 elected not to disclose the content of any conversations he had with his attorney. During further proffered examination Bargman testified that the conversation he had with his attorney was strictly business and that he intended it to be confidential. However, he conceded that he knew his conversation could be overheard by another inmate in the holding cell.
Appellants argue that the attorney-client privilege does not apply because the communication was made in the presence of a third person and that even if it does apply, its invocation in this situation deprives appellants of their sixth amendment right to confront their accusers. The attorney-client privilege has recently been codified as part of Florida's new evidence code. See § 90.502, Fla. Stat. (1979). It codifies the common law doctrine that the privilege attaches only to confidential communications not intended to be disclosed to third persons who are not furthering the rendition of legal services. § 90.502(1)(c), Fla. Stat. (1979). Whether a communication is confidential depends on whether the person invoking the privilege knew or should have known that the privileged conversation was being overheard. Proffitt v. State, 315 So.2d 461 (Fla. 1975), aff'd, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Thus in this case Bargman's admission that he knew the conversation with his lawyer was being overheard belies his assertion that he intended the conversation to be confidential. There was no evidence that he made any attempt to keep from being overheard. Indeed he admitted that he did not tell the other inmate that the conversation was private nor ask him not to listen. We realize that an inmate's control over his environment is limited and that an inmate cannot decide whether other persons will be present when he has the opportunity to talk with his attorney. However, this jail had a special, separate room equipped with telephones through which visitors could talk to inmates in private. In the absence of any evidence that Bargman was purposely prevented from conferring with his attorney in private, we find he was capable of preventing others from overhearing his conversation with his lawyer. His failure to do so precludes him from asserting the attorney-client privilege. Therefore, the court had no basis for limiting appellants' sixth amendment right to confront their accusers. See Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).
However, we find the trial court's limitation on appellants' cross examination was harmless error. Bargman was not the state's key witness; much of his testimony was corroborated by other witnesses. Furthermore, the jury was apprised of Bargman's criminal status and knew that he was yet to be sentenced for his part in the prison riot. Since there was other evidence establishing Bargman's interest, appellants have failed to show how they have been harmed. Accord, Anglin v. State, 28 Md. App. 150, 344 A.2d 130 (Ct.Spec.App. 1973).
Appellants' fifth point on appeal is that the trial court erred in retaining jurisdiction over the first third of each of their sentences. They argue that attempted escape and rioting do not come under section 947.16(3), Florida Statutes (1979), and that the judge failed to justify his retention of jurisdiction with individual particularity as required by subsection 947.16(3)(a), Florida Statutes (1979). We disagree with the first argument but agree with the second. Section 947.16(3) authorizes a judge to retain jurisdiction over the first third of a defendant's sentence for certain enumerated crimes including "any felony involving ... the use of intentional violence." Here appellants used intentional violence in committing the felonies of rioting and attempted escape. As for the second argument, the trial judge did not make any findings justifying his retention of jurisdiction. Therefore we vacate that portion of the judgment and sentence and remand these cases so that he may make such findings part of the record as required by section 947.16(3)(a). See Hicks v. State, 388 So.2d 357 (Fla. 2d DCA 1980); Tompkins v. State, 386 So.2d 597 (Fla. 5th DCA 1980).
Finally, we address the two points raised solely by appellant Styles. We have *1039 reviewed the entire record and we find that there is independent proof of his involvement in the conspiracy to escape justifying the admission of the out-of-court statements made by his co-conspirators under section 90.803(18)(e), Florida Statutes (1979). The independent proof consisted of testimony that Styles was one of the few inmates that worked on trying to pry the bars loose from the window; that at times he stood guard at the cell door, allowing only a few chosen inmates access to the window they were trying to escape from; that he was the one who told other inmates to bring Ciarciaglino in to negotiate; that he passed out broom and mop handles; and that when the police broke in he threatened to stab Ciarciaglino with the jail keys. All of this evidence proved that he was one of the key principals in the attempted escape and riot and is sufficient to support his convictions for kidnapping.
We therefore affirm the convictions of all three appellants but remand these cases to the trial judge to state with individual particularity his reasons for retaining jurisdiction over the first third of each appellant's sentence.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] 787.01 Kidnapping. 

(1)(a) "Kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against his will and without lawful authority, with intent to:
1. Hold for ransom or reward or as a shield or hostage.
2. Commit or facilitate commission of any felony.
3. Inflict bodily harm upon or to terrorize the victim or another person.
4. Interfere with the performance of any governmental or political function.
(b) Confinement of a child under the age of 13 is against his will within the meaning of subsection (1) if such confinement is without the consent of his parent or legal guardian.
(2) Whoever kidnaps a person is guilty of a felony of the first degree, punishable by imprisonment for a term of years not exceeding life or as provided in s. 775.082, s. 775.083, or s. 775.084.
[2] See, e.g., People v. Daniels, 71 Cal.2d 1119, 459 P.2d 225, 80 Cal. Rptr. 897 (1969); People v. Bridges, 612 P.2d 1110 (Colo. 1980); Tyre v. State, 412 A.2d 326 (Del. 1980); State v. Cabral, 228 Kan. 741, 619 P.2d 1163 (1980); State v. Estes, 418 A.2d 1108 (Me. 1980); People v. Adams, 389 Mich. 222, 205 N.W.2d 415 (1973); State v. McEwan, 265 N.W.2d 818 (Minn. 1978); Cuevas v. State, 338 So.2d 1236 (Miss. 1976); Wright v. State, 581 P.2d 442 (Nev. 1978); People v. Lombardi, 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206 (1967); State v. Fulcher, 34 N.C. App. 233, 237 S.E.2d 909 (1977); State v. Logan, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979); State v. Garcia, 288 Or. 413, 605 P.2d 671 (1980); State v. Curtis, 298 N.W.2d 807 (S.D. 1980); see also Model Penal Code, § 212.1 (1974).

Kentucky has a statute which specifically exempts from the kidnapping statute any person who has committed "an offense defined outside this chapter and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense... ." Ky.Rev.Stat. § 509.050 (1975). See Timmons v. Commonwealth, 555 S.W.2d 234 (Ky. 1977). However, this statute does not apply when the interference of another's liberty is incidental to an attempted escape. Wood v. Commonwealth, 567 S.W.2d 121 (Ky. 1978).
[3] See, e.g., People v. Daniels, 71 Cal.2d 1119, 459 P.2d 225, 80 Cal. Rptr. 897 (1969); State v. Buggs, 219 Kan. 203, 547 P.2d 720 (1976); Wright v. State, 581 P.2d 442 (Nev. 1978); People v. Levy, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842 (1965).
[4] See, e.g., People v. Daniels, 71 Cal.2d 1119, 459 P.2d 225, 80 Cal. Rptr. 897, (1969); People v. Bridges, 612 P.2d 1110 (Colo. 1980); State v. Fulcher, 34 N.C. App. 233, 237 S.E.2d 909 (1977). The Minnesota Supreme Court has placed the onus of insuring that the state's kidnapping statute is not used to impose unduly harsh penalties on the courts, the correctional authorities, and the prosecutors themselves. State v. Morris, 281 Minn. 119, 160 N.W.2d 715 (1968).
[5] State v. Fulcher, 34 N.C. App. 233, 237 S.E.2d 909 (1977). See also People v. Adams, 389 Mich. 222, 205 N.W.2d 415 (1973), where the Michigan Supreme Court narrowly construed Michigan's kidnapping statute to avoid constitutional overbreadth.
[6] Compare People v. Bridges, 612 P.2d 1110 (Colo. 1980) (kidnapping conviction reversed where teacher was raped on school grounds) and State v. Logan, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979) (kidnapping conviction reversed where rape victim was forced from street to go down alley) with State v. Morris, 281 Minn. 119, 160 N.W.2d 715 (1968) (kidnapping conviction upheld where student was raped on campus) and Tyre v. State, 412 A.2d 326 (Del. 1980) (kidnapping conviction upheld where rape victim was forced from public thoroughfare to partially hidden culvert). See generally Annot., 43 A.L.R.3d 699 (1972).
[7] See Annot., 59 A.L.R.3d 1306 (1974).
[8] See Nagy v. State, 386 N.E.2d 654 (Ind. 1979); Brooks v. State, 236 So.2d 751 (Miss. 1970).
[9] See Friend v. State, 385 So.2d 696 (Fla. 1st DCA 1980); Cuevas v. State, 338 So.2d 1236 (Miss. 1976).
[10] In People v. Daniels, 71 Cal.2d 1119, 459 P.2d 225, 80 Cal. Rptr. 897 (1969), the California Supreme Court reversed defendants' kidnapping convictions because the "brief movements which defendants ... compelled their victims to perform in furtherance of robbery were merely incidental to that crime and did not substantially increase the risk of harm otherwise present." 71 Cal.2d at 1140, 459 P.2d at 238, 80 Cal. Rptr. at 910. From this statement other courts have inferred that California has a two-pronged test to determine whether a kidnapping has occurred independently of another crime. See People v. Bridges, 612 P.2d 1110 (Colo. 1980); People v. Adams, 389 Mich. 222, 205 N.W.2d 415 (1973). Actually, there is no distinction between the two prongs. "[S]ubstantial confinement, restraint or asportation not merely incidental to the commission of another crime would seem necessarily to involve some increased risk of mental or physical harm." State v. Fulcher, 34 N.C. App. 233, 240, 237 S.E.2d 909, 914 (1977). Conversely, confinement or movement of a victim which substantially increases the risk of harm not normally present in the commission of a crime is not merely incidental to that crime.
[11] The term hostage implies confining a person with the intent to hold that person as security for the performance or forbearance of some act by a third person. State v. Littlefield, 389 A.2d 16 (Me. 1978); State v. Crump, 82 N.M. 487, 484 P.2d 329 (1971); State v. Lee, 33 N.C. App. 162, 234 S.E.2d 482 (1977).
[12] Kan. Stat. Ann. § 21-3420 (1974) provides:

Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:
(a) For ransom, or as a shield or hostage; or
(b) To facilitate flight or the commission of any crime; or
(c) To inflict bodily injury or to terrorize the victim or another; or
(d) To interfere with the performance of any governmental or political function.
Kidnapping is a class B felony.
[13] For a case with identical facts, but where the prisoners did not contest their kidnapping convictions, see State v. Beshaw, 136 Vt. 311, 388 A.2d 381 (1978).