358 S.E.2d 801

**STATE of West Virginia**

v.

**Paul BRUMFIELD.**

**No. 17319.**

Supreme Court of Appeals of West Virginia.

June 12, 1987.

David Johnson, Asst. Atty. Gen., for appellant.

Clovis D. Kuhn, Huntington, for appellee.

McHUGH, Justice:

This case is before this Court upon appeal from the Circuit Court of Cabell County. The appellant was convicted of three counts of kidnapping three correctional officers in the Cabell County Jail during an unsuccessful escape attempt. This Court has before it the petition for appeal, all matters of record and briefs.

I

The appellant was confined in the Cabell County Jail awaiting trial on robbery charges. He and another inmate, David Plumley, both were confined on the third floor of the jail.

On February 23, 1984, the appellant and Plumley attempted an escape from the facility. At approximately 10:00 p.m. that evening, they were moving a mattress into the third floor dayroom. Scott Tyree, a correctional officer in charge of the third floor, supervised the move. As the appellant and Plumley moved the mattress into the dayroom, they turned and confronted Tyree with two shanks, or homemade knives, they had fashioned from a broom. They then moved Tyree into a dayroom, took his keys and radio, and tied his hands and feet. After tying Tyree, the appellant and Plumley left the dayroom and proceeded to the fifth floor to obtain some tools left there by workmen.

After hearing noises on the fifth floor, correctional officers Clarence Johnson and John Bowman, who supervised the fourth and fifth floors of the jail, respectively,

went to investigate. The appellant and Plumley accosted the officers from behind and ordered them to lie down. Officer Bowman's keys were taken, the officers' radios were thrown or laid aside, and the two officers were locked in the fifth floor dayroom. Leaving the officers inside the dayroom, the inmates took some hacksaws and hammers to assist in their escape.

Meanwhile, Officer Tyree had managed to free himself and alert other correctional officers. Upon discovering that the building was surrounded by police, the inmates returned to the fifth floor dayroom and surrendered themselves to Officers Johnson and Bowman.

The appellant was indicted on three counts of kidnapping, three counts of aggravated robbery and one count of possession of a dangerous and deadly weapon. A jury returned a verdict of guilty on each of the three kidnapping counts. The trial court sentenced the appellant to three ten-year sentences, to run consecutively.

## II

The primary issue now before us is whether the convictions of the appellant, under the facts in this case, may be sustained under the kidnapping statute, *W. Va. Code*, 61–2–14a [1965].[1]

The appellant contends that the prosecution proved only that he attempted jail breaking pursuant to *W. Va. Code*, 61–5–10(b) [1984].[2] He further stresses that his actions did not constitute kidnapping of the correctional officers, because their detention was merely incidental to his escape attempt.

The pertinent part of *W. Va. Code*, 61–2–14a [1965], without the penalty provisions, states:

If any person, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this State or within this State, or otherwise kidnap any other person, for the purpose or with the intent of taking, receiving, demanding, or extorting from such person, or from any other person or persons, any ransom, money, or other thing, or any concession or advantage of any sort, or the purpose or with the intent of shielding or protecting himself or others from bodily harm or of evading capture or arrest after he or they have committed a crime, he shall be guilty of a felony, ...

This Court had the opportunity to construe this statute in *State v. Miller*, 175 W.Va. 616, 336 S.E.2d 910 (1985). In *Miller*, the victim had been inveigled into the defendant's car supposedly to assist the defendant in looking for a dog. The defendant then attempted to tie some cord around the victim's wrist. Thereafter, the defendant threatened the victim with a steak knife and forced her to lie down in the front seat of the car as he drove. He eventually drove to an isolated area that was unfamiliar to both of them and sexually assaulted the victim. From the time the victim had been inveigled into the defendant's car to the time he eventually released her, she had been in his control for approximately one and one-half hours. Based upon those facts, this Court concluded that the kidnapping was not merely incidental to the commission of the first-

---

1. Although several errors were assigned by the appellant in his brief, the appellant focuses on this particular issue. Because of the conclusion we reach on this issue, we find it unnecessary to address the remaining contentions.

2. We note that the appellant was not indicted for the offense of jail breaking. The relevant portion, however, of *W. Va. Code*, 61–5–10(b) [1965] provides:

 (b) If any person be lawfully confined in jail and not sentenced on conviction of a criminal offense, shall escape therefrom by any means, such persons shall (i) if he be confined upon a charge of a felony, be guilty

of an additional felony, and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than five years, ...

For the penalty imposed for the offense of attempted jailbreak, see *W. Va. Code*, 61–11–8 [1966]. Where the victim is returned alive, without bodily harm having been inflicted upon him, and returned without ransom, money or other thing, or any concession or advantage having been paid or yielded, the penalty for kidnapping is not less than ten years. *W. Va. Code*, 61–2–14a [1965].

degree sexual assault. 175 W.Va. at 622, 336 S.E.2d at 916.

■ In so holding, the Court reasoned that "[i]n interpreting and applying a generally worded kidnapping statute, such as W.Va.Code, 61–2–14a, in a situation where another offense was committed, some reasonable limitations on the broad scope of kidnapping must be developed. The general rule is that a kidnapping has not been committed when it is incidental to another crime. In deciding whether the acts that technically constitute kidnapping were incidental to another crime, courts examine the length of time the victim was held or moved, the distance the victim was forced to move, the location and environment of the place the victim was detained, and the exposure of the victim to an increased risk of harm." Syl. pt. 2, *State v. Miller, supra*.

In *Miller*, we recognized that it is conceivable that situations may arise where the kidnapping is incidental to the commission of another crime. 175 W.Va. at 620, 336 S.E.2d at 913.[3] We quoted with approval the language of New York's highest court in *People v. Levy*, 15 N.Y.2d 159, 164, 256 N.Y.S.2d 793, 796, 204 N.E.2d 842, 844, *cert. denied* 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965) in interpreting a similarly broadly worded kidnapping statute, the court made the following observations:

"This definition [of kidnapping] could literally overrun several other crimes, ... since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes. Some of the definitions could apply alike to kidnapping....

It is unlikely that these restraints, sometimes accompanied by asportation, which are incidents to other crimes and have long been treated as integral parts of other crimes, were intended by the Legislature in framing its broad definition of kidnapping to constitute a separate crime of kidnapping, even though kidnapping might sometimes be spelled out literally from the statutory words."

*State v. Miller, supra* 175 W.Va. at 620, 336 S.E.2d at 913–14.

Cases, such as the one before us, where inmates have confined persons against their will with the intent of escaping from prison present their own special problems in relation to kidnapping statutes. *See generally* annotation, *Seizure of Prison Official by Inmates as Kidnapping*, 59 A.L.R.3d 1306 (1974). Courts have not hesitated to uphold kidnapping convictions where a prisoner forces another person to accompany him off prison grounds, *Nagy v. State*, 270 Ind. 384, 386 N.E.2d 654 (1979), and where a prisoner confines someone after he has escaped from the prison, *Cuevas v. State*, 338 So.2d 1236 (Miss.1976). A problem, however, arises when, during an escape attempt, a prisoner confines or moves another person within the walls of the correctional facility. Under those circumstances, courts have closely examined the specific facts of the case to determine whether the confinement or movement of the victim was incidental to the escape or whether it took on independent significance justifying a kidnapping conviction.

Our research has revealed at least two jurisdictions in which the courts have reversed kidnapping convictions on the basis that the confinement or movement of a correctional officer was merely incidental to the escape. The Supreme Court of North Carolina, in *State v. Dix*, 282 N.C. 490, 193 S.E.2d 897 (1973), applying the common law of kidnapping codified in *N.C.Gen.Stat.* § 14–39 [1933], reversed the

---

**3.** Most courts that have considered whether a kidnapping was committed in addition to another crime have similarly concluded that a kidnapping has not been committed when it is incidental to the commission of the other crime. In deciding whether the acts that technically constitute kidnapping were incidental to another crime, the courts have examined the factors set forth in syllabus point 2 of *State v. Miller,* *supra*. *See, e.g., People v. Daniels*, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225 (1969); *Mobley v. State*, 409 So.2d 1031 (Fla.1982); *People v. Adams*, 389 Mich. 222, 205 N.W.2d 415 (1973); *People v. Levy*, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842, *cert. denied* 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965); *State v. Innis*, 433 A.2d 646 (R.I.1981) *cert. de-*

conviction of a person[4] who drew a gun on a jailer, marched him back 62 feet, locked him in a jail cell and proceeded to release other inmates. In so holding, the court stressed that the movement of the jailer was a "mere technical asportation," purely incidental to the defendant's assault upon the jailer and the escape of the other inmates. 282 N.C. at 501–02, 193 S.E.2d at 904. The court pointed out that the defendant's primary objective was to remove the other prisoners from the jail, not to move the jailer. The court further reasoned that the forcible movement of the officer had no independent significance and created no risks of harm to the jailer which were not inherent in the escape engineered by the defendant. 282 N.C. at 502, 193 S.E.2d at 904.[5]

Similarly, in *People v. Fain,* 18 Cal. App.3d 137, 95 Cal.Rptr. 562 (1971), a California Court of Appeals reversed the kidnapping conviction of an inmate who, along with other inmates, held a knife on a guard, forced him to accompany them to the first floor of the prison and then released him when they reached the outside door. The victim ultimately had been moved only a few feet. The court applied the two-pronged test used by the Supreme Court of California in construing the state's kidnapping statute[6] and concluded that the movement of the officer was merely incidental to the escape and that it did not substantially increase the risk of harm

to him. 18 Cal.App.3d at 144, 95 Cal.Rptr. at 565–66.

In a case factually similar to *Fain,* a California appellate court reversed a kidnapping conviction, albeit for a slightly different reason, in *People v. Gibbs,* 12 Cal. App.3d 526, 90 Cal.Rptr. 866 (1970). There, two inmates in a county jail overpowered a jail officer and two trustees and forcibly moved them from one cellblock to another on the same floor of the jail during the course of their attempted escape. Another officer was seized by the defendants and forced to descend to a lower floor and from there onto a roof where the inmates were apprehended. The court discussed at length the large size of the facility and stated that two of the victims were forced to walk the equivalent of two city blocks. The issue as to whether such movement was merely incidental to the escape attempt and whether there was a substantial increase in the amount of risk to the victims were decided by the court to be questions of fact to be determined by the jury under appropriate instructions. 12 Cal. App.3d at 546, 90 Cal.Rptr. at 878. The court concluded that the jury instructions given were erroneous[7] and reduced the kidnapping convictions to the lesser included offense of false imprisonment.

In *People v. Adams,* 389 Mich. 222, 205 N.W.2d 415 (1973), the Supreme Court of Michigan also reversed the kidnapping conviction of an inmate because of an errone-

---

nied, 456 U.S. 942, 102 S.Ct. 2005, 72 L.Ed.2d 464 (1982).

4. In *State v. Dix, supra,* the jailer was seized by the defendant, who had escaped from jail the previous day. In a strange twist, the defendant broke into the jail to effect the escape of other prisoners incarcerated therein.

5. In North Carolina, because of a statutory amendment in 1975, *State v. Dix, supra,* is no longer controlling. *See N.C.Gen.Stat.* § 14–39 [1975, 1983]. *See also State v. Adams,* 299 N.C. 699, 705, 264 S.E.2d 46, 50 (1980). As now written, the statute requires no showing of asportation as an element of kidnapping, where confinement or restraint is shown. *State v. Adams,* 299 N.C. at 704, 264 S.E.2d at 49.

6. The California Supreme Court, in *People v. Daniels,* 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459

P.2d 225 (1969), reversed multiple defendants' kidnapping convictions, holding "that the brief movements which defendants ... compelled their victims to perform in furtherance of the robbery were merely incidental to that crime and did not substantially increase the risk of harm otherwise present." 71 Cal.2d at 1140, 80 Cal.Rptr. at 910, 459 P.2d at 238. Other courts have interpreted this statement to mean that California has a two-pronged test to determine whether a kidnapping has occurred independently of another crime. *See, e.g., People v. Adams,* 389 Mich. 222, 205 N.W.2d 415 (1973).

7. The instructions given in *People v. Gibbs* defined kidnapping simply as the forcible movement, for some distance, of a person against his will, and were erroneous in light of the California Supreme Court's decision in *People v. Daniels,* 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225 (1969), discussed *supra* at n. 5.

ous jury instruction. In that case, the defendant and two other inmates pulled knives on a prison officer and forced him to accompany them to a prison hospital 1500 feet away. At the hospital, the inmates seized two guards, a prison doctor and another inmate and held these victims hostage while they discussed their grievances with the prison officials and a newspaper reporter. They surrendered after five and one-half hours. The court reversed the kidnapping conviction because the jury was not instructed that the crime of kidnaping does not include movement that is incidental to another underlying lesser crime. 389 Mich. at 238–39, 244–45, 205 N.W.2d at 422–23, 426.

In *Adams*, the court expressed concern for the potential misuse inherent in the kidnapping statute under which the defendant was charged. The court was of the opinion that the statute, when literally construed, embraced any intentional confinement of another person without legal justification or excuse and observed that virtually any assault, battery, rape or robbery involved some intentional confinement of the victim.[8] The court concluded that, in order to withstand a constitutional challenge because of overbreadth, an asportation of the victim was required before the crime of kidnapping is complete.[9]

In formulating an asportation standard, the court concluded that the critical criterion to be applied is that the movement must not be merely incidental to the commission of a lesser underlying crime, but must be incidental to the kidnapping. 389 Mich. at 238, 205 N.W.2d at 422. The court also stressed, in comments pertinent to the case now before us, that "[i]f the underlying crime involves murder, extortion or *taking a hostage*, movement incidental thereto is generally sufficient to establish a valid statutory kidnapping." 389 Mich. at 238, 205 N.W.2d at 422. (emphasis added).

 The suggestion in *Adams* that the "merely incidental" rule does not apply in situations where the purpose in confining or moving another person is to use that person as a hostage has been noted in at least two cases. *Mobley v. State*, 409 So.2d 1031, 1036 (Fla.1982); *see, e.g., State v. Wooten*, 135 N.J.Super. 6, 11–12, 342 A.2d 549, 552 (1975), *aff'd by an equally divided court*, 73 N.J. 317, 374 A.2d 1204 (1977). Thus, in a prison escape situation where a person is moved or confined but not used as a hostage, the "merely incidental" rule is applicable, and a conviction for kidnapping cannot be maintained when that movement or confinement is incidental to the commission of the underlying offense.

> Most ... courts recognize that where there is a 'traditional' kidnapping involving either a ransom demand or the detention of a victim as a hostage to prevent capture or arrest, and the victim has in addition been ... robbed ... there is no question that a prosecution for these separate crimes may be maintained.

*State v. Miller*, 175 W.Va. 616, 621 n. 6, 336 S.E.2d 910, 915 n. 6 (1985). Thus it follows from this reasoning that, ordinarily, in an escape situation involving confinement of a correctional officer who is not utilized as a hostage, prosecution for the offense of kidnapping will not be upheld.

 Furthermore, "[p]enal statutes must be strictly construed against the State and in favor of the defendant." Syl. pt. 3, *State ex rel. Carson v. Wood*, 154 W.Va. 397, 175 S.E.2d 482 (1970). *See also* syl. pt. 3, *State v. Nichols*, 177 W.Va. 483,

---

**8.** The statute interpreted by the Supreme Court of Michigan in this case reads as follows:

> Any person who wilfully, maliciously and without lawful authority shall forcibly or secretly confine or imprison any other person within this state against his will, or shall forcibly carry or send such person out of this state, or shall forcibly seize or confine, or shall inveigle or kidnap any other person with intent to extort money or other valuable thing thereby or with intent either to cause such person to be secretly confined or imprisoned in this state against his will, or in any way held to service against his will, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years.

*Mich.Comp.Laws Ann.* § 750.349 (West 1968).

**9.** In *Adams*, "asportation" was generally referred to as the "movement element" requisite to the statutory offense of kidnapping. 389 Mich. at 238, 205 N.W.2d at 422.

**246**

354 S.E.2d 415 (1987); syl. pt. 1, *State v. Turley,* 177 W.Va. 69, 350 S.E.2d 696 (1986); *Ray v. Mangum,* 176 W.Va. 534, 536, 346 S.E.2d 52, 54 (1986). In *Myers v. Murensky,* 162 W.Va. 5, 245 S.E.2d 920 (1978), *overruled on another point,* syl. pt. 2, *State v. Myers,* 171 W.Va. 277, 298 S.E.2d 813 (1982), the Court elaborated on this point:

> The Court is not at liberty to consider the intent or purpose of a criminal statute to the extent possible in other areas of the law where the Legislature's intent is more precisely expressed.... [A]mbiguous penal statutes are strictly construed against the State and favorably to the liberty of the citizen.

162 W.Va. at 8–9, 245 S.E.2d at 922. *See also State v. Turley, supra,* 177 W.Va. at 72, 350 S.E.2d at 700. This principle rests on the fear that expansive judicial interpretations may create penalties for offenses that were not intended by the legislature.

We have recognized that the interpretation of a kidnapping statute which is generally worded, such as *W. Va. Code,* 61–2–14a [1965], may be troublesome. *See, e.g.,* syl. pt. 2, *State v. Miller,* 175 W.Va. 616, 336 S.E.2d 910 (1985), discussed *supra.* In applying the principles set forth in *Miller* and the other cases discussed herein, we conclude that the appellant in this case did not violate the kidnapping statute, *W. Va. Code,* 61–2–14a [1965]. The facts as proven by the State clearly support this conclusion.[10]

■ In the case before us, the appellant, with the assistance of another inmate, transported the three correctional officers within the walls of the jail and moved them only slight distances. The first officer who was detained, Scott Tyree, was confined on the same floor that he was assigned to supervise, and the inmates left him immediately to pursue their escape. The other officers, Johnson and Bowman, were confined on the fifth floor, where they both went to investigate strange noises. Tyree

managed to free himself and alert assistance, and upon learning that the escape attempt was futile, the appellant and Plumley surrendered to officers Johnson and Bowman. The entire incident lasted less than twenty minutes. Officer Tyree managed to free himself in even less time.

From the above facts, it can be seen that the victims were not moved any appreciable distances or removed from their immediate environments. There was no exposure of the victims to an increased risk of harm inasmuch as the appellant and Plumley left the officers where they were detained in order to pursue their attempted jailbreak. Importantly, the appellant never took the officers as hostages, nor did he use them as a shield to protect himself or Plumley from bodily harm or as a shield to assist them in their escapes. Clearly, the "kidnapping" alleged in this case was incidental to the appellant's attempted escape from the jail.

■ Accordingly, where an inmate, by force, has unlawfully confined a correctional officer for a minimal period of time within the walls of a correctional facility in order to facilitate his escape, and movement of that officer was slight and did not result in exposure to an increased risk of harm, a conviction for the offense of kidnapping pursuant to *W. Va. Code,* 61–2–14a [1965] will be reversed where the confinement was incidental to the escape and the inmate has not utilized the officer as a hostage nor as a shield to protect that inmate or others from bodily harm or capture or arrest after that inmate or others have committed a crime.

For the foregoing reasons, the judgment of the Circuit Court of Cabell County is reversed.

Reversed.

---

**10.** This case is illustrative of the fear expressed by the Supreme Court of Michigan that "[a] literal reading of the [State] kidnapping statute would permit a prosecutor to aggravate the charges against any assailant, robber, or rapist by charging the literal violation of the kidnapping statute which must inevitably accompany each of those offenses." *People v. Adams,* 389 Mich. 222, 233, 205 N.W.2d 415, 420 (1973).